**Larry G. GREENHOW, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 83–730.**

District of Columbia Court of Appeals.

Argued March 7, 1985.

Decided April 11, 1985.

---

Richard K. Gilbert, Washington, D.C., appointed by this court, for appellant.

John M. Facciola, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, Melvin D. Wright, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK and TERRY, Associate Judges.

MACK, Associate Judge:

Following a jury trial, appellant Larry Greenhow was convicted of possession of phenmetrazine (Preludin), a controlled substance, in violation of D.C.Code § 33–541(c) (Supp.1983) (now codified at D.C.Code § 33–541(d) (Supp.1984)). Greenhow appeals on two grounds: first, that the trial court erred in refusing to instruct the jury on the defense of alibi; and second, that the court impermissibly intruded into the trial when he gave the prosecutor information from the court file that allowed the prosecutor to impeach appellant in regard to statements he had made concerning his employment history. Finding no error, we affirm.

I.

The government's evidence showed that at 8:50 p.m. on December 13, 1982, two undercover policemen, Leonard Allen and Michael Tyler, were approached in the 2100 block of 14th Street, N.W., by someone offering to sell "bam and works" (Preludin and syringes). Officer Allen told this individual, later identified as appellant's codefendant Herbert Smith,[1] that he wanted to buy one Preludin pill. Smith walked across the street to a grey van, parked 10 to 15 feet away, and had a conversation with someone seated in the driver's seat of the van. According to Allen, this individual got out of the van, recrossed the street with Smith, and walked to a spot within 6 to 10 feet of Allen and Tyler, where Allen

---

1. Smith has not appealed his conviction for pos-    session of Preludin.

had an opportunity to observe him under bright street lights. The individual reached into his coat pocket and gave something to Smith; Smith then walked back to Allen and gave him a Preludin tablet in return for two marked bills, a $10 and a $5.[2] Smith returned to the man who had left the van and gave him one of the bills.

Officer Michael Tyler testified that he saw Smith walk to the van; an individual in the van got out, but Tyler could not see this individual well enough from his location to identify him; the two men had a conversation, but Tyler did not see anything exchanged; and Smith then returned to Allen with the Preludin. Tyler said that from the officers' vantage point, only the passenger side of the van was visible.

Following the transaction with Smith, Allen and Tyler engaged in a second, unrelated drug transaction, and then returned to their squad car, where Allen filled out a "buy" report and broadcast a description of two suspects and the vehicle out of which they were operating. Allen described the individual who had exited the van as a short black male, wearing a green army field jacket and brown pants, sitting in the driver's side of a parked grey van.

Officers Peter Serbinoff and Angelo Parisi saw the parked van described by Allen, and ordered all of its occupants—appellant Greenhow, who was in the driver's seat, Smith, and three other men, Ronald Shorter, William Johnson, and Steven Wise—to get out and stand on the corner. Serbinoff testified that several men grabbed coats as they exited the van. Parisi said that only Smith took a coat, and that all the other men had their coats on at the time they exited the van. Allen rode by several times in an unmarked car in order to attempt to identify the two men involved in the Preludin transaction. On the first ride-by he identified Smith; on the second, he identified Greenhow as the man who had

given Smith the Preludin and received from him one of the two marked bills. Smith and Greenhow were arrested, and although no narcotics were found on their persons (and none were found in the van), Greenhow had the marked $10 in his pants pocket and Smith had the marked $5 in his sock. Allen testified that approximately 20 minutes elapsed from the time he purchased the Preludin to the time he identified Smith and Greenhow; since he stated that the purchase occurred at 8:50 p.m., appellant therefore was arrested at approximately 9:10.

Appellant testified in his own defense. He stated that he and Ronald Shorter had driven to 14th and V Streets that evening in order to get something to eat, but he did not know what time they arrived in the area. After he parked the van, he saw William Johnson and Steven Wise, who asked him for a ride home. He agreed to take them home, and told them to wait in the van until he returned from a carry-out across the street. He said that he and Shorter were in the carry-out for about 20 to 30 minutes, but he had no idea what time it was when they came out. He and Shorter brought their food back to the van to eat. He started up the van and turned on the heater, and after a few minutes he took off his coat, a burgundy leather jacket. Five to ten minutes after he had started up the van, Smith arrived, and asked him for a ride home. He agreed, and asked Smith for money owed for items Smith had taken from a concession truck operated by Greenhow and his mother. Smith gave him $10. Five to ten minutes after Smith's arrival, the police came and ordered everyone out of the van. A police officer grabbed a green jacket and ordered Greenhow to put it on, which he did, even though it did not belong to him. He did not tell anyone that he was wearing the wrong jacket. He maintains that, based on the green jacket, he was incorrectly identified by Officer Al-

---

**2.** Although the serial numbers of these two bills were recorded in police records, they were not listed as issued to Officers Allen or Tyler, but were recorded as issued to an Officer Gregory, who was not involved in this transaction.

len as one of the individuals involved in the drug transaction. Appellant further points out that, although Allen described him as "short," he in fact was one of the taller men in the van.

Ronald Shorter corroborated appellant's version of the events in all material respects. Appellant's codefendant, Smith, testified that he first saw appellant and Shorter when they came out of the carry-out; he asked appellant for a ride home, appellant agreed, and he got in the van. The police arrived shortly thereafter, and ordered appellant to put on a green jacket that did not belong to him.

William Johnson also corroborated appellant's contention that he had gone to get something to eat, and that he first saw Smith when he came back to the van from the carry-out. Johnson's testimony is significant in that he is the sole defense witness who was able to give times for the events with any specificity. Johnson stated that he, Smith, and Wise had been together that evening, and at about 7:15 p.m. they saw Greenhow and asked for a ride home. At that point, Greenhow said that he was going to get something to eat and that Johnson and his friends could wait in the van. Greenhow and Shorter were away from the van for half an hour; thus, according to Johnson, Greenhow returned to the van at approximately 7:45, over an hour before the Preludin transaction at issue here.

## II.

Appellant contends that he presented evidence which, if believed, demonstrated that he was not on the scene when the drug transaction took place, and that the trial court therefore erred by refusing to instruct the jury on the defense of alibi. We disagree. Although the trial court must instruct on any defense fairly presented by the evidence,[3] appellant's evi-

---

3. Many of the cases cited by the government in support of the proposition that we may find harmless error in a trial court's refusal to give an alibi instruction when so requested by a defendant, contain factors not present in this case: either the government was not required to prove the defendant's presence as an element of the offense (and thus an alibi defense, which negates proof of presence, was inapposite), *United States v. Erlenbaugh,* 452 F.2d 967, 975 (7th Cir.1971), *aff'd on other grounds,* 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972); *see Tomlinson v. United States,* 68 App.D.C. 106, 110, 93 F.2d 652, 656 (1937), *cert. denied,* 303 U.S. 642, 646, 58 S.Ct. 645, 82 L.Ed. 1102, 1107 (1938); *United States v. Lee,* 483 F.2d 968, 970 (5th Cir.1973); or defense counsel had neglected to request an alibi instruction, *United States v. Dye,* 508 F.2d 1226, 1231 (6th Cir.1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); *see United States v. Coughlin,* 514 F.2d 904, 907 (2d Cir.1975); *Roper v. United States,* 403 F.2d 796, 798 (5th Cir.1968). In other cases, evidence adduced in support of an alibi was negligible or nonexistent, *see Guthrie v. United States,* 92 U.S.App.D.C. 361, 366, 207 F.2d 19, 24 (1953); *United States v. Lustig,* 555 F.2d 737, 750 (9th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977); *United States v. Cole,* 453 F.2d 902, 906 (8th Cir.), *cert. denied,* 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972).

On the other hand, numerous cases require an alibi instruction when the defendant has put on some evidence that he was not on the scene of the crime at the time the government's evidence placed him there. These cases thus reject the government's position that (1) the failure to give an alibi instruction when the defendant has presented some evidence of an alibi may be considered harmless error when "the defense was really lack of participation" or "mistaken identification" (Appellee's Brief at 7–8), and that (2) the instruction was in any case properly omitted because it would have "needlessly confused" the jury (*id.* at 9). *See, e.g., United States v. Hoke,* 610 F.2d 678, 679 (9th Cir.1980); *United States v. Ragghianti,* 560 F.2d 1376, 1379 (9th Cir.1977); *United States v. Burse,* 531 F.2d 1151, 1153 (2d Cir.1976); *United States v. Megna,* 450 F.2d 511, 513 (5th Cir.1971); *United States v. Marcus,* 166 F.2d 497, 503–04 (3d Cir.1948). Moreover, while the government's case here was sufficient to go to the jury, that case cannot be characterized as strong. Only Allen could identify appellant; Tyler's version of the events on the night of the offense did not mesh in all respects with Allen's; police records showed that the marked bills had not in fact been issued to Allen; and Allen's description of appellant, while correct in one respect (both appellant and the man Allen saw conversing with Smith were wearing green jackets), was incorrect in another material respect (he described the man as "short," while appellant may have been the tallest man in the van).

dence provided no basis upon which an alibi defense could be constructed. The "hornbook" definition of alibi provides:

[Alibi] involves the impossibility of accused's presence at the scene of the offense at the time of its commission.... The defense of alibi is designed to prove that accused, during the whole time that the crime was being committed, was so far from the place where the crime occurred that he could not have participated in it, or that he was so far away that he could not, with ordinary exertion, have reached the place in time to have so participated in the crime; and in order to be legally effective it must cover the entire time during which the crime is alleged to have been committed.

22 C.J.S. *Criminal Law* § 40, at 130–31 (1961). In order to warrant an alibi instruction,[4] the defense evidence must be of such a character that, if believed, it would show that the defendant could not have committed the crime. *See State v. Gillespie*, 163 N.W.2d 922, 925 (Iowa 1969); *Commonwealth v. Whiting*, 409 Pa. 492, 497, 187 A.2d 563, 566 (1963); *State v. Martin*, 2 Ariz.App. 510, 515, 410 P.2d 132, 137 (1966); *People v. Terrell*, 138 Cal. App.2d 35, 291 P.2d 155, 166 (1955); *Commonwealth v. McQueen*, 178 Pa.Super. 38, 40, 112 A.2d 820, 822 (1955). "The question whether an alibi is claimed is not settled by what a defendant contends his defense is," *State v. Dunne*, 234 Iowa 1185, 1191–92, 15 N.W.2d 296, 300 (1944); rather, the alibi instruction is appropriate only when the defense evidence demonstrates the defendant's presence elsewhere for the entire period of time the government's evidence shows he was involved in criminal activity, *see id.*

The defense evidence presented in this case did not meet the prerequisites set forth above for the grounding of an alibi instruction. Appellant's version of the events that transpired that evening is not necessarily inconsistent with his participation in the Preludin transaction. The government's evidence showed that the drug transaction took place at 8:50 p.m., and that Allen's ride-by took place at approximately 9:10 p.m. The occupants of the van were therefore ordered out into the street some minutes before 9:10. Appellant testified that Smith arrived at the van five to ten minutes prior to the arrival of the police, and that he had returned to the van from the carry-out five to ten minutes before Smith arrived. Appellant's testimony is therefore not inconsistent with his presence in the van at 8:50 that evening. Moreover, although defense witnesses Shorter and Smith corroborated appellant's testimony, neither testified that appellant was not in the van at 8:50. Defense witness Johnson stated that appellant left for the carry-out at around 7:20, and returned half an hour later; Johnson's testimony therefore conflicts with any purported alibi defense.

---

**4.** The importance of giving an alibi instruction when the evidence so warrants was explained as follows in *Burse:*

It is well established that, under proper circumstances, the jury must be given an alibi instruction when the defense so requests. The reasoning behind this rule is not difficult to appreciate. Jurors are, by definition, untrained in the specifics of the law and, accordingly, must be instructed as to the legal standards they are bound to apply. In those cases where an alibi defense is presented, there exists the danger that the failure to prove that defense will be taken by the jury as a sign of the defendant's guilt.

Of course, failure to establish an alibi does not properly constitute evidence of guilt since it is the burden of the government to prove the complicity of the defendant, not the burden of the defendant to establish his innocence.

That, however, is a point with which we cannot expect jurors to be familiar.

While jurors are apprised in general terms of the government's burden to prove each element of the charged offense beyond a reasonable doubt, this broad admonition as to the government's obligation will not suffice under circumstances such as those here. Even when the jury has been instructed as to the government's burden, there remains the danger that the effect of the attempted alibi defense will be misunderstood. Only a specific instruction can insure that this problem will not occur.

531 F.2d at 1153 (citations omitted).

In sum, we find that appellant did not present sufficient evidence upon which an alibi instruction could be based; neither appellant nor any of his witnesses testified that he was not at the scene of the crime at the time government witnesses placed him there. Under these circumstances, the trial court did not err in refusing the proffered alibi instruction.

## III.

The second charge of error relates to the trial court's participation in the cross-examination of appellant by counsel for the government. Appellant had stated to court intake personnel that he was unemployed, and this information was contained in the court's file. Following direct examination of appellant, the following colloquy took place:

THE COURT: How long have you been employed in this truck you have, selling ice cream and cigarettes and things?

[APPELLANT]: Four and a half to five years.

THE COURT: All right, counsel, come to the bench, please. Would you stand down, sir, while I talk to the lawyers?

### AT THE BENCH

THE COURT: Mr. Gilbert [counsel for appellant], I'm somewhat disturbed to learn that he's been employed for four or five years. When under oath, he swore to our intake officers that he was, in fact, unemployed. So, I'm going to give that statement to the District Attorney for whatever purposes he may wish to use it in cross examination. You may resume.

### IN OPEN COURT CROSS EXAMINATION

BY MR. WRIGHT [counsel for the government]:

Q. Mr. Greenhow, how long have you been employed as a vendor?

A. About four and a half to five years.

Q. And, were you interviewed at pre-trial about your employment, here in the courthouse?

A. Yes, sir.

Q. And what did you tell them about your employment, at that time?

A. That I wasn't working anywhere.

Q. And, which is correct, that you're employed as a vendor, or that you are not working?

A. That I wasn't working anywhere, at the time.

THE COURT: On the night in question, you were not employed?

A. Well, it all depends on what you mean, because, like, me and my mother are partnerships in it, right? And, at the time, that this incident happened, I was just—I haven't, you know, been near the truck. My mother's been running the truck, because I—I just wasn't running the truck. I had left it up to my mother.

BY MR. WRIGHT:

Q. I see. So now, you're telling the ladies and gentlemen that you were not employed, at that time?

A. No, uh-uh. I'm just the owner.

Q. And, when the police asked you whether or not you were employed, did you tell them that you were employed as a vendor?

A. I don't know.

Q. Did you tell them that you were unemployed?

A. I don't know.

Q. Did they ask you?

A. I don't know, I don't remember.

Defense counsel argues that the trial judge spearheaded cross-examination of appellant and thus exceeded his inherent authority "to make proper inquiry of any witness [including the defendant] when he deems that the end of justice may be served thereby." *Griffin v. United States*, 83 U.S.App. D.C. 20, 21, 164 F.2d 903, 904 (1947), *cert. denied*, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948). The court initiated the examination of appellant regarding his employment, and appellant stated that he had

been employed as a vendor for almost five years. Then, in front of the jury (albeit at a bench conference), the court handed to the prosecutor a record that contradicted appellant's response, which was used to impeach his statement. Appellant's employment as a vendor at the time of the offense was an important element in his defense, for he stated that he received the $10 marked bill from Smith in payment for items that Smith had taken from his concession stand. Appellant contends that his defense was severely prejudiced by the judge's intrusion into the trial process, and that the extent of this intrusion warrants reversal of his conviction.

■ ■ The trial court's inherent power to participate in the examination of witnesses "should be sparingly exercised, particularly in a jury trial where the potential for prejudice is greatly enhanced." *Springs v. United States*, 311 A.2d 499, 500 (D.C.1973) (citations omitted); *see Jackson v. United States*, 117 U.S.App.D.C. 325, 326, 329 F.2d 893, 894 (1964) (per curiam) ("in a jury case, a trial judge should exercise restraint and caution because of the possible prejudicial consequences of the presider's intervention"). The trial judge should proceed cautiously in this regard because:

> Interrogation of witnesses tends to assimilate the court's role with the advocate's, and may tread over the line separating the provinces of judge and jury. The presumption of innocence may be jeopardized by an assumption of guilt radiated by overzealous quizzing by the judge, and the right to fair trial may be imperiled by an apparent breach of the atmosphere of judicial evenhandedness that should pervade the courtroom. There is the risk that the questioning may bear "the seeds of tilting the balance against the accused" and place "the judge in the eyes of some jurors, on the side of the prosecution." There is also the danger that the judge may elicit ...

responses hurtful to the accused—responses to which the jury may assign peculiar weight because of their ostensible judicial sponsorship.

*United States v. Barbour*, 137 U.S.App. D.C. 116, 118, 420 F.2d 1319, 1321 (1969). Viewing the trial events prospectively, *see United States v. Patterson*, 209 U.S.App. D.C. 249, 251–52, 652 F.2d 1046, 1048–49, *cert. denied*, 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1981), it is apparent that the trial court's initial question and follow-up actions could not help but harm the accused: the court undoubtedly was aware that the prosecutor's cross-examination, following the court's lead, would both impeach appellant's credibility and undermine his defense.

Nevertheless, our examination of the record leads us to conclude that "the substantial rights of [appellant] were not affected" by the trial court's actions, *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942), and therefore we find no reversible error here. We have reviewed the record and find no other instance of trial court intrusion into the proceedings.[5] The trial court's inquiries "were neither hostile nor were they coupled with critical remarks," *Springs*, 311 A.2d at 500, factors that, if present, would have weighed in favor of reversal. In addition, as a result of the trial court's second question (*i.e.*, was appellant employed on the night of the offense), appellant "was enabled to make a logical answer explaining his conduct ... consistent with his [defense] theory." *Griffin*, 83 U.S.App.D.C. at 21, 164 F.2d at 904. He responded to the judge's question by stating that although he owned the vending stand, his mother operated it, and therefore he did not consider himself to be employed and so stated to court intake personnel.

We further note that the trial judge "historically is not just an impartial umpire,"

---

**5.** Appellant points to several instances in the record where the trial court properly insisted that defense counsel refrain from leading his witnesses, and he argues that these events demonstrate hostility by the trial court towards the defense case. This contention is without merit.

*Patterson,* 209 U.S.App.D.C. at 251, 652 F.2d at 1048. Given the fact that a "criminal trial is not a game but 'a quest for truth,'" *Womack v. United States,* 350 A.2d 381, 383 (D.C.1976) (citation omitted), the trial's "pollution by perjury is and should be properly thwarted by the trial judge." *Patterson,* 209 U.S.App.D.C. at 252, 652 F.2d at 1049.

*Affirmed.*