Andre GRAY, a/k/a Curtis
Brown, Appellant,

v.

UNITED STATES, Appellee.

No. 87–116.

District of Columbia Court of Appeals.

Submitted April 5, 1988.
Decided Oct. 27, 1988.

Thomas T. Heslep, Lexington, Va., appointed by this court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Kenneth D. Bynum, and Patricia A. Riley, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge,
TERRY, Associate Judge, and
GALLAGHER, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of one count of distributing phencyclidine (PCP) and one count of distributing marijuana, both in violation of D.C. Code § 33–541(a)(1) (1988). On appeal he makes several assignments of error, one of which is that the trial court erred in failing to give an alibi instruction, although requested to do so. We agree that this failure was reversible error, and accordingly we reverse appellant's conviction.[1]

## I

In September 1986 Detective Emmanuellen Moore and Officer Sandy Austin were working under cover, investigating drug traffic in Southeast Washington. On the evening of September 3 they were driving in a private automobile in the 2500 block of Sayles Place, Southeast, when appellant approached from the driver's side and asked them if they wanted "some boat." Appellant walked around to the passenger side of the car, where Moore was sitting, and handed her a tinfoil packet through the front window. Moore was about to open it, but appellant said, "You can't check it here ... because the police are around," so she gave him two $5 bills whose serial numbers had been pre-recorded. The officers then drove away, and Moore broadcast a description of appellant to an arrest team, which was waiting nearby. The entire transaction, according to Moore, lasted "probably about twenty-five seconds." After refreshing her recollection from a police report, Officer Austin testified that the sale occurred at 9:48 p.m.

About twenty minutes later, two officers detained appellant and took him to the corner of Sayles Place and Bowen Street. Moore and Austin then drove past that corner, and from a distance of five to ten feet they positively identified appellant as the man who had sold the tinfoil packet to Moore. They both testified that they identified appellant simultaneously, so that nei-

ther one reinforced the other's identification. Appellant was then placed under arrest. A search incident to that arrest yielded $47, including three $5 bills, but no drugs. The serial numbers of those $5 bills did not match the numbers of the bills which Detective Moore had used to purchase the tinfoil packet.

The report of a chemical analysis established that the packet contained 352 milligrams of phencyclidine and marijuana. An expert witness testified without objection that this was a usable amount.

Angela Gray, appellant's sister, and her boy friend, Lorenzo Crowder, testified for the defense. Gray said that on the evening of September 3 she picked up her brother at a laundromat; then they both drove to pick up Crowder at a restaurant on Rhode Island Avenue, where he worked. Leaving the restaurant at about 9:15, they drove to appellant's house on 15th Place, Southeast, and waited while appellant went in to put away his clothes. After about five minutes he came back out to the car, and they all drove to Sayles Place. Gray and Crowder dropped appellant off there and continued on to their own apartment a few blocks away. When they arrived, Gray went in and took her coat off, and Crowder turned on the television; the ten o'clock news was on. Crowder "started moving around the house" and then went out. "A couple of minutes" later, he found out that appellant had been "locked up." Crowder immediately went back inside and told Gray what he had heard. Both Gray and Crowder testified that no more than fifteen minutes elapsed between the time they dropped appellant off and the time they learned that he had been "locked up."

Appellant testified that his sister and her boy friend dropped him off at Sayles Place to visit a friend. Just as he got out of the car, he saw a woman he knew, so he paused to exchange a word or two with her. Then, as he started to cross the street, he saw police cars "coming from

---

**1.** We therefore do not consider appellant's other contentions, except for one which we shall discuss briefly in footnote 8, *infra*. We note that one issue which he raises, concerning the legali-

ty of the mandatory minimum sentence, was resolved against him in *Hazel v. United States*, 516 A.2d 944 (D.C.1986).

everywhere," so he stopped and leaned against a fence. He noticed that the police were headed toward the intersection of Bowen Street and Sayles Place. As he watched all the activity, he saw one of the police officers drive by "two or three times, just cruising, looking all around." When this officer, Glenn Kline, stopped in front of him, appellant asked him for the time. Five minutes later two other police officers came up and ordered him to stand against a car, and he was arrested. Appellant admitted giving the police a false name (Curtis Brown) and a false address at the time of his arrest, explaining that he did so because he was wanted on a bench warrant for a misdemeanor, and he did not want to go to jail on that charge.

Defense counsel's request for an alibi instruction was denied.

## II

When a defendant requests an instruction on a theory of the case that negates his guilt of the crime charged, and that instruction is supported by any evidence, however weak, an instruction stating the substance of the defendant's theory must be given. *Stack v. United States*, 519 A.2d 147, 154 (D.C.1986); *Greenhow v. United States*, 490 A.2d 1130, 1133 (D.C. 1985); *Fersner v. United States*, 482 A.2d 387, 392 (D.C.1984); *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978). Although the instruction need not be framed in the exact language proposed by the defendant, *Stack, supra*, 519 A.2d at 154 (citing cases); *Ramey v. United States*, 118 U.S.App.D.C. 355, 356–357, 336 F.2d 743, 744–745, *cert. denied*, 379 U.S. 840, 85 S.Ct. 79, 13 L.Ed.2d 47 (1964), the

failure to give it at all is reversible error. *Stack, supra*, 519 A.2d at 154; *Levine v. United States*, 104 U.S.App.D.C. 281, 282, 261 F.2d 747, 748 (1958).[2] This rule applies to a defense theory of alibi. *See Greenhow v. United States, supra*, 490 A.2d at 1133 & n. 3.

The government correctly observes that an alibi must place the defendant "so far away" from the scene of the crime during "the entire time" of its commission that he or she could not have committed it. 22 C.J.S. *Criminal Law* § 40, at 130–131 (1961), quoted in *Greenhow, supra*, 490 A.2d at 1134; *cf. Hardy v. United States*, 118 U.S.App.D.C. 253, 254, 335 F.2d 288, 289 (1964) (evidence that defendant "physically could not have been present at the point of arrest as claimed by the officers" held to be relevant; conviction reversed because that evidence was excluded).[3] "So far away" conjures an image of great distance, but actually it means only so removed as to be not precisely at the scene of the crime. Thus it matters not whether the defendant was in the house next door or halfway across town; if he or she was not at the exact scene of the crime, the defendant has an alibi.

The government's reliance on the *Greenhow* case is misplaced, for the facts of *Greenhow* are distinguishable from the facts before us here. In *Greenhow* the crime was committed at 8:50 p.m., but the only defense witness who remembered a specific time put the events of the alibi at 7:45 p.m., which gave the defendant ample time to travel the short distance—just across the street—to the crime scene. We

---

2. Indeed, a defendant is entitled upon request to an instruction on any issue fairly raised by the evidence, regardless of whether it is consistent with the defense theory of the case or the defendant's testimony. *Womack v. United States*, 119 U.S.App.D.C. 40, 336 F.2d 959 (1964); *see Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896).

3. A claim of alibi—which is simply the Latin word for "elsewhere"—"is an attempt to prove that the defendant was not present at the time and place of the offense and hence could not have committed it." *Tomlinson v. United States*,

68 App.D.C. 106, 109, 93 F.2d 652, 655 (1937), *cert. denied*, 303 U.S. 642, 58 S.Ct. 645, 82 L.Ed. 1102 (1938). Although sometimes characterized as an affirmative defense, strictly speaking it is not. Rather, it is a denial of one fact which the government must prove as part of its case, namely, that the defendant was present at the scene of the crime. 21 AM.JUR.2D *Criminal Law* § 192, at 349 (1981). Thus, to be successful, an alibi need only raise a reasonable doubt in the minds of the jurors that the defendant was there. *See United States v. Alston*, 179 U.S.App. D.C. 129, 133, 551 F.2d 315, 319 (1976).

held accordingly that there was no basis in the evidence for an alibi instruction.

In the case at bar, however, Angela Gray and Lorenzo Crowder testified that they dropped appellant off, drove no more than seven blocks to their house,[4] and went inside. Almost immediately Crowder turned on the television and saw that the ten o'clock news was being broadcast. Crowder then went outside, and "a couple of minutes" later he heard from someone that appellant had been "locked up." From the time they dropped appellant off until the time Crowder learned that appellant was "locked up," ten to fifteen minutes passed. Since the police witnesses estimated that about twenty minutes elapsed between the drug sale (at 9:48) and the arrest of appellant ("somewhere around" 10:10, according to Officer Kline) after he was identified by the undercover officers, appellant could not have been the seller if his alibi was true. As the government points out in its brief, this interpretation depends on the premise that "locked up" referred to appellant's formal arrest after being identified by the undercover officers, rather than his detention by two other officers, which Officer Kline said took place "a minute or two" after 10:00 o'clock. Nevertheless, since an instruction embodying a defense theory must be given when any evidence fairly tends to support it,[5] the ambiguity in the phrase "locked up" should be resolved in appellant's favor.

Furthermore, there was other testimony supporting appellant's alibi. It is true, as the government points out, that appellant said he saw Officer Kline drive by in his pickup truck two or three times, "just cruising, looking all around," while other police cars descended on the area. In so testifying, appellant admitted being in the vicinity of the crime within minutes after the broadcast of the lookout. This testimony, however, placed him at the top of the hill, whereas the drug transaction took place at the bottom of the hill. Thus appellant put himself close to the scene of the crime at the time of its commission, but not right there. In addition, appellant's sister and her boy friend testified that they dropped appellant off, went home, turned on the ten o'clock news, and then heard that appellant had been "locked up." No more than fifteen minutes elapsed from the time they left appellant on Sayles Place until they learned of his arrest or detention. Since part of that time was consumed by traveling from Sayles Place to their home on Elvans Road, it would be reasonable to infer that only ten or twelve minutes passed from the time appellant was dropped off to the time he was "locked up." Even if we assume that "locked up" refers to his detention at 10:01 or 10:02, and assume further that Crowder turned on the television set at exactly 10:00 o'clock rather than some time thereafter, the testimony of Angela Gray and Lorenzo Crowder means that they could not have dropped appellant off until some time after 9:50. According to the government's evidence, the drug sale took place at 9:48 and lasted for only twenty-five seconds.

■ The upshot of the alibi evidence is not totally clear, but it tends to show that appellant was probably dropped off between 9:50 and 9:55. Even if he was present at 9:48, the time of the offense, his own testimony put him at the top of the hill, not at the bottom of the hill where the crime occurred. Because the alibi testimony introduced by the defense meets the standard of "any evidence"[6] (a standard designed to be easily met, resolving doubts in favor of the defense), an alibi instruction should have been given.

■ The government argues that if the failure to give the alibi instruction was error, it was harmless. Several cases explicitly state, however, that failure to give an instruction embodying a defense theory that negates guilt of the crime charged,

4. The distance was variously stated to be from four to seven blocks.

5. E.g., Greenhow v. United States, supra, 490 A.2d at 1133; Montgomery v. United States, supra, 384 A.2d at 660 (citing cases).

6. Stevenson v. United States, supra note 2, 162 U.S. at 323, 16 S.Ct. at 842; Fersner v. United States, supra, 482 A.2d at 392; Montgomery v. United States, supra, 384 A.2d at 660.

when properly requested and supported by any evidence, is necessarily reversible error. *E.g., Stack v. United States, supra,* 519 A.2d at 154; *Salley v. United States,* 122 U.S.App.D.C. 359, 360, 353 F.2d 897, 898 (1965), quoting from *Levine v. United States, supra.* When we have rejected a claim that a certain defense-requested instruction should have been given, we have done so either because the instructions which the court actually gave adequately presented the defense theory, *e.g., Montgomery, supra,* 384 A.2d at 661, or because there was no evidentiary support for the requested instruction, *e.g., Greenhow, supra,* 490 A.2d at 1135; *Fersner, supra,* 482 A.2d at 393. Although we need not adopt in this case a *per se* rule that the failure to give an alibi instruction when one is warranted can never be harmless error, we find it difficult to imagine a case in which such an error could possibly be harmless. In the case at bar, certainly, we can readily reject the government's assertion of harmlessness,[7] and we do so.

We hold that the trial court erred in refusing to give an alibi instruction as defense counsel requested, and that appellant is therefore entitled to reversal of his conviction and a new trial.[8]

REVERSED AND REMANDED.

---

**7.** In addition to arguing the strength of its case, the government asserts that defense counsel must have recognized the weakness of his alibi defense because he failed to argue the alibi to the jury. This assertion fails because defense counsel made his apparent tactical decision not to argue the alibi only after the request for an instruction was refused. We cannot and will not speculate what might have happened had the instruction been properly given.

**8.** Appellant also argues that the trial court erred in permitting the prosecutor to inquire about his use of an alias at the time of his arrest. Because we are reversing on another ground, we need not decide this point. We note, however, that the trial court told the prosecutor, at a hearing on a motion *in limine,* that evidence of the alias could be introduced only on the issue of veracity if and when the defendant testified, not during the government's case in chief. The prosecutor failed to abide by this ruling, but allowed the alias to come out during the testimony of Detective Moore, his very first witness, long before appellant took the stand. (Moore referred to appellant as "Gregory Brown," whereas the name he gave the police was Curtis Brown.)

If the alias comes up again on retrial, the court and the government should be guided by our decisions in *Bailey v. United States,* 544 A.2d 289 (D.C.1988); *Reavis v. United States,* 395 A.2d 75, 77 n. 2 (D.C.1978); and *Johnson v. United States,* 389 A.2d.1353, 1355 (D.C.1978); *see also United States v. Hilliard,* 186 U.S.App.D. C. 312, 569 F.2d 143 (1977).