James **GETHERS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 87–51.

District of Columbia Court of Appeals.

Argued Dec. 14, 1988.
Decided March 21, 1989.

Peter H. Meyers, Washington, D.C., appointed by this court, for appellant.

Kevin A. Forder, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, TERRY, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

■■■ Gethers was convicted of one count of distribution of cocaine and one count of possession of cocaine with intent to distribute (PWID), both in violation of D.C.Code § 33–541(a)(1). On appeal, he contends, among other things,[1] that the trial judge committed reversible error in failing to instruct the jury with respect to alibi, as requested by the defense. In light of *Gray v. United States*, 549 A.2d 347 (D.C.1988), we conclude that Gethers had a right to the requested instruction, but with respect to the distribution charge only. Accordingly, we must reverse his conviction for distribution. Finding no prejudicial "spillover" to the PWID charge, however, we affirm Gethers' conviction of that offense.

I

The facts pertinent to this appeal are disarmingly simple. The government's evidence showed that on the evening of October 8, 1985, a police officer acting under cover approached Gethers in the 400 block of O Street, N.W. and asked him for a "half" of cocaine. Gethers directed him to a playground area approximately thirty-five to fifty feet south of O Street known as the "cut." Shortly thereafter, Gethers joined the officer at a bench in the "cut." After some discussion of the manner in which the cocaine was to be ingested, Gethers took a single plastic packet of white powder from a brown paper bag containing other similar packets and handed the packet to the officer. In return, the officer gave Gethers $50 in prerecorded funds.

The two men then walked back to O Street and the officer observed Gethers toss the paper bag containing the packets of white powder into a bush which was "right there on O Street." The officer promptly advised members of the "arrest team" of what had transpired. He provided them with a description of Gethers, and told them where they could find the discarded bag.

Shortly thereafter, officers arrested Gethers. In a search incident to the arrest, they found the prerecorded money with which the undercover officer had purchased the single packet—two $20 bills and one $10 bill—in Gethers' left front pants pocket. The officers also recovered the brown paper bag, which contained thirteen additional plastic packets of white powder. Chemical tests conducted by the Drug Enforcement Administration disclosed that the single packet sold to the undercover officer contained 656 milligrams of 37% pure cocaine. The thirteen packets in the paper bag contained 8,250 milligrams of 34% pure cocaine.[2]

---

**1.** We find Gethers' other contentions unpersuasive and address them summarily. The trial judge did not "tilt towards the prosecution," and his intervention to obtain clarification of evidence relating to the chain of custody was appropriate. *See, e.g., Griffin v. United States,* 83 U.S.APP.D.C. 20, 21–22, 164 F.2d 903, 904–05, *cert. denied,* 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948). The prosecutor's allusions to the veracity of witnesses were not expressions of personal opinion, but comments on the evidence. *See Kleinbart v. United States,* 426 A.2d 343, 352–53 (D.C.1981). Gethers' constitutional challenge to the mandatory minimum sentencing provisions of D.C.Code § 33–541 is baseless; the statute neither denies Gethers equal protection of the law, *see Backman v. United States,*

516 A.2d 923.(D.C.1986); *United States v. Bridgman,* 173 U.S.App.D.C. 150, 172, 523 F.2d 1099, 1121 (1975); *United States v. Brown,* 115 Daily Wash.L.Rptr. 1821 (Super.Ct.D.C.1987) (Kramer, J.), nor is it void for vagueness. *See, e.g., Nash v. United States,* 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913); *Leiss v. United States,* 364 A.2d 803, 806–07 (D.C.1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977).

**2.** The government also presented expert testimony tending to show, among other things, that thirteen individually wrapped packages of cocaine indicated an intent to distribute the substance.

Gethers testified in his own defense and denied committing the offenses. He claimed that he had come into possession of the prerecorded funds by making change for someone on the street shortly before his arrest. He and two defense witnesses, Allen Snead[3] and Ella Wilson, testified that they had been talking and drinking with Gethers on O Street for two hours (Snead) and twenty-five minutes (Ms. Wilson) and did not see him leave O Street or go to the "cut" or possess or distribute cocaine.

After both parties had rested, defense counsel requested the judge to give an alibi instruction. In support of his request, he stated that "there has been evidence introduced in this case that Mr. Gethers was standing and conversing with other individuals when these alleged offenses—in a different place from where these offenses—separated spatially from where these offenses occurred." The judge disagreed:

> Sir, that's the most strained explanation [of a] request I've heard in years. That request is denied. The defendant was clearly at the scene since 4:20. By his own admission, he was at the scene.... That's not an alibi defense. This is a misidentification defense, that's what he is saying in effect. "I didn't do it, therefore the policeman has misidentified me...." So I'm going to deny that because alibi is not a defense in this case. There is no evidence to support the instruction is the technical reason for the denial.

Gethers was convicted of both charges. The judge sentenced him to serve two concurrent terms of three to ten years, consecutive to any other sentence. This appeal followed.

**3.** Snead was himself arrested for and subsequently convicted of possessing cocaine on that day.

**4.** Although *Gray* seems to be the first case in this jurisdiction in which this precise point was made, it does not represent a novel approach to the issue. In *Fay v. United States*, 22 F.2d 740, 742 (9th Cir.1927), the court said of the alibi defense that

> it does not follow that such an attempted defense may by the court be withdrawn from the jury, or that the court may properly de-

## II

In *Greenhow v. United States*, 490 A.2d 1130, 1134 (D.C.1985), this court defined the defense of alibi as follows:

> [Alibi] involves the impossibility of accused's presence at the scene of the offense at the time of its commission.... The defense of alibi is designed to prove that the accused, during the whole time that the crime was being committed, was so far from the place where the crime occurred that he could not have participated in it, or that he was so far away that he could not, with ordinary exertion, have reached the place in time to have so participated in the crime; and in order to be legally effective it must cover the entire time during which the crime is alleged to have been committed. 22 C.J.S. *Criminal Law* § 40, at 130–131 (1961).

More recently, in *Gray v. United States, supra,* the court elaborated on the *Greenhow* definition, and particularly on the words "so far away," in language which has considerable import for the distribution charge here:

> "So far away" conjures an image of great distance, but actually it means only so removed as to be not precisely at the scene of the crime. Thus it matters not whether the defendant was in the house next door or halfway across town; *if he or she was not at the exact scene of the crime, the defendant has an alibi.*

549 A.2d at 349 (emphasis added).[4]

■ In the present case, the entire distribution offense—the exchange of cocaine for cash—was committed in the "cut." The defense case was that Gethers was never in the "cut" at the time the crime

cline to instruct upon it, merely because the evidence in support of it may be thought to be inconclusive or even feeble. If supported by any evidence at all, defendant was entitled to have the defense go to the jury, and *it is not important whether he was miles away, or only a few yards away, from the junk house, if he was not in it* at the time the government contends the offenses were committed therein.

(Emphasis added.)

was committed. Under these circumstances, *Gray* and to some extent *Fay* hold that an alibi instruction must be given upon request.

■ Although the evidence against Gethers was compelling—the police identification was corroborated by the recovery of the prerecorded purchase money on his person—the failure to give the requested instruction cannot be dismissed as harmless error. It is true, as the Supreme Court of Kansas has stated, that "a jury may be supposed to know without being told that, where the commission of a crime depends upon the personal presence of the defendant at a given time or place, he cannot be guilty if he [was] then somewhere else." *State v. Nichols,* 117 Kan. 630, 632–33, 232 P. 1058, 1059 (1925). Nevertheless, it has been consistently held to be error to decline to give an alibi instruction when it is requested and where there is an evidentiary basis for the instruction, and it is ordinarily insufficient to instruct the jury, as the trial judge did here, that the defendant's guilt must be proved beyond a reasonable doubt. *See generally* Annotation: *Duty of court to instruct on the subject of alibi,* 118 A.L.R. 1303, 1312–16 (1939), and authorities there cited. The reason for requiring a specific alibi instruction was well stated by the Supreme Court of Pennsylvania in *Commonwealth v. Pounds,* 490 Pa. 621, 633–34, 417 A.2d 597, 603 (1980):

> [T]he trial court failed to instruct the jury that it should acquit if Pounds' alibi evidence, even if not wholly believed, raised a reasonable doubt of his presence at the scene of the crime at the time of its commission and, thus, of his guilt. . . . Where an alibi defense is presented, such an instruction is necessary due to the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt. . . .

General instructions on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against this danger.

(Citations and footnotes omitted.) *See also United States v. Alston,* 179 U.S.App.D.C. 129, 134, 551 F.2d 315, 320 (1976).[5]

■ In *Gray v. United States, supra,* this court reiterated that when a defendant requests an instruction on his theory of the case, including alibi, and when that instruction is supported by "any evidence, however weak," an instruction stating the substance of the defense *must* be given. 549 A.2d at 349. Rejecting the government's claim that failure to give the instruction, if error at all, was harmless, the court stated:

> Although we need not adopt in this case a *per se* rule that the failure to give an alibi instruction when one is warranted can never be harmless error, we find it difficult to imagine a case in which such an error could possibly be harmless.

*Id.* at 351. Assuming that a case of harmless error, though "difficult to imagine," can still arise in this kind of situation after *Gray,* the government has offered no suggestion as to why this should be deemed to be the extraordinary case in which *Gray's* strong presumption of prejudice would not apply.[6] An alibi instruction must be given even where the defendant is the sole alibi witness. *Smith v. State,* 302 Md. 175, ——, 486 A.2d 196, 199–200 (1985). Here, two other witnesses purported to corroborate Gethers' absence from the "cut." Accordingly, we cannot find the judge's refusal to give the requested instruction harmless.

### III

■ The considerations which require reversal of Gethers' distribution conviction

---

5. *But see People v. Poe,* 48 Ill.2d 506, 511–12, 272 N.E.2d 28, 31–32 (1971), and *State v. Skinner,* 210 Kan. 354, 361–62, 503 P.2d 168, 174 (1972), holding that the refusal to give a separate instruction as to alibi is not error.

6. *Cf. People v. Parker,* 135 Cal.App. 761, 762, 27 P.2d 921, 922 (1933), suggesting that reversal may not be required in all cases in which an alibi instruction has been improperly refused, but nevertheless reversing a conviction where the alibi evidence was "very weak" because "that was a question for the jury to weigh and to consider."

do not, however, apply to the PWID offense. As we have noted at p. 203, *supra,* an alibi must, in order to be effective, cover the entire time during which the crime is alleged to have been committed. *Gray, supra,* 549 A.2d at 349; *Greenhow, supra,* 490 A.2d at 1134. Gethers allegedly possessed the thirteen packets for a period of time which embraced, at least, not only his presence in the "cut" but also his subsequent return to O Street. Indeed, he allegedly placed the contraband near a bush which was located on O Street.

Gethers acknowledged his presence on O Street and presented an alibi only with respect to activity that took place in the "cut." Although, as Gethers points out, the government's claim is that the same person who sold the one packet possessed the other thirteen, the alibi which applies to the distribution offense (localized in its entirety in the "cut") simply does not reach the PWID offense, which occurred in large measure on O Street, the very location where Gethers claimed to have been during the entire period in question. Accordingly, we agree with the government that Gethers was not entitled to an alibi instruction with respect to the possessory offense.

 This does not end our inquiry, however. Even if an alibi instruction was properly refused as to the PWID count, reversal of his conviction of that offense would nevertheless be required if there was prejudicial "spillover" from the distribution count. *See United States v. Cambindo Valencia,* 609 F.2d 603, 625 (2d Cir.), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1979); *cf. United States v. Losada,* 674 F.2d 167, 170 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). An appellate court may affirm a conviction on one count of an indictment despite reversing another count if, and we think only if, the two counts can be logically separated from one another because they relate to separate and distinct crimes with respect to which the jury made separate findings. *See, e.g., State v. Gosselin,* 110 Vt. 361, ——, 6 A.2d 14, 17 (1939); 24B C.J.S. *Criminal Law* § 1949(b) at 370 (1961), and authorities there cited.

Where there is no way of knowing for which offense a properly instructed jury would have found an appellant guilty, a new trial is required as a prophylactic for improper jury instructions. *United States v. Nelson,* 574 F.2d 277, 282 (5th Cir.), *cert. denied,* 439 U.S. 956, 99 S.Ct. 355, 58 L.Ed. 2d 347 (1978).

We conclude, however, that the two offenses in this case are logically separable and that there was no prejudicial "spillover." We have previously noted that Gethers presented an alibi as to one offense but not the other. It is true that Gethers' alleged sale of one packet in the "cut" could be considered by the jury as providing some evidence of his intent to distribute the thirteen packets in the paper bag. To the extent that the judge's failure to give an alibi instruction might be viewed as undercutting the jury's conclusion that Gethers distributed the one packet, there is some theoretical linkage with one element of PWID as well.

There was, however, other compelling evidence that the thirteen packages were designed for distribution. Their number, their packaging in a manner suitable for quick sale, and the government expert's uncontradicted testimony in that regard left little room for any rational finding that the contraband in the paper bag was for personal use rather than for distribution.

An alibi for an entire offense (the distribution of the single packet) is one thing. An alibi technically relevant to one portion of the evidence supporting one element of the PWID offense is quite another. We think it farfetched to suggest that, if an alibi instruction had been given with respect to the distribution offense, the jury would not have found that the thirteen packets which were the subject of the PWID charge were intended for distribution. *See Helm v. United States,* 555 A.2d 465 (1989). We can therefore say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S.

750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Accordingly, Gethers' conviction of PWID must stand.

### IV

For the foregoing reasons, appellant's conviction of possession of cocaine with intent to distribute is affirmed, and his conviction for distribution of cocaine is reversed and the case remanded for a new trial.[7]

*So ordered.*

---

7. Gethers received substantial but concurrent sentences for the two offenses, and our reversal of his conviction of distribution is therefore something of a Pyrrhic victory. Although the case is not moot, since a conviction of distribution following a retrial would have collateral consequences, *see Fitzgerald v. United States,* 472 A.2d 52 (D.C.1984), our remand for a new trial is not intended to suggest that, under the circumstances, such a new trial would in fact be worthwhile.