Arno M. HENDERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–928.

District of Columbia Court of Appeals.

Argued Nov. 17, 1992.
Decided Dec. 30, 1992.

Monoranjan Bezboruah, appointed by the court, for appellant.

James H. Dinan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Corbin Weiss, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and STEADMAN, Associate Judges, and NEWMAN, Senior Judge.

FERREN, Associate Judge:

After his first trial ended in a mistrial, appellant Arno M. Henderson was retried and convicted of unlawful distribution of cocaine and unlawful possession with intent to distribute cocaine. D.C.Code § 33–541(a)(1) (1988 Repl.). The trial court sentenced him to four to twelve years' imprisonment on each count, both sentences to run concurrently. Henderson claims on appeal (1) that the trial court committed reversible error in denying the defense request for an alibi instruction and (2) that prosecutorial misconduct denied him a fair trial. We conclude that appellant was entitled to an alibi instruction and therefore reverse his conviction.

## I.

■ According to the government's evidence, on December 7, 1990, police received a telephone complaint that someone was selling crack cocaine inside the lobby at 832 Rittenhouse Street, Northwest. Ten to fifteen minutes later, police went out to visit this location. At about 5:55 p.m., an undercover officer went to 832 Rittenhouse, where he met appellant at the door of the apartment building and asked appellant about purchasing crack cocaine. Appellant told the officer to follow him inside the building. After the officer did so, he no-

ticed a second man, later identified as a Mr. Kelly, sitting on the stairs leading to the second floor. Appellant told the officer to wait in the lobby, and appellant went partway down a flight of stairs to the basement, returning with a plastic bag containing several smaller zip-lock bags of a white rock substance, later identified as crack. The officer purchased two of the zip-lock bags for $40 in prerecorded bills. The officer then left the building, noticing two or three individuals who were approaching the building. After he returned to his car, the officer broadcast a lookout for a black male wearing a black hat, black coat, and blue jeans inside 832 Rittenhouse.

The arrest team went inside the building at about 6:00 p.m. and found four men. Police seized both appellant and Kelly because they were wearing similar clothing, although only appellant was wearing a hat. Police took both men outside, where the undercover officer identified them, and the police arrested appellant, releasing Kelly. In the "modus operandi" (MO) photograph that was later taken of appellant at the central cellblock, he was wearing a coat that did not match the lookout description.

Appellant and two other witnesses testified for the defense. Appellant's half-brother, Rodney Williams, who lived in Apartment 8 (not appellant's apartment) at 832 Rittenhouse, testified that on the evening of the arrest, he left his apartment and passed through the lobby on his way to taking out the trash. He saw Kelly in the lobby but not his brother. He went out through the front door and around the side of the building to the back. As he did so, he noticed police cars at the side of the building. He then saw the police jump out and enter the building, and, shortly thereafter, bring out appellant and Kelly. Williams said he recognized the distinctive-looking jacket in the MO photo as one belonging to appellant.[1]

---

1. The lookout broadcast identified the seller as wearing a black jacket, and the government presented evidence that appellant was so garbed when arrested. However, his arrest photo, taken after his arrival at the central cellblock, showed him wearing a distinctive colored jacket. The government's theory was that appellant switched jackets with another prisoner before the photo was taken.

Appellant's girlfriend, Ti Ray Edwards, testified that she lived with appellant in Apartment 1 (a basement apartment) at 832 Rittenhouse. She and appellant were in the apartment planning to go to the store together. Apparently while Edwards was in the bathroom getting ready to leave, appellant left the apartment, telling Edwards he would wait for her on the stairs.[2] She also stated that the jacket appellant was wearing in his arrest photo was the same jacket he was wearing on the day of his arrest.

Appellant testified that he was in Apartment 1 when he heard his brother taking out the trash. He had no question about this not only because of his brother's loud voice but also because his basement apartment had a window on the side of the building. Very shortly thereafter, appellant left his apartment and went up the stairs to the lobby where he began talking to Kelly. No more than "a good couple of minutes" later the arresting officers came into the building and seized appellant and Kelly. Appellant denied selling drugs or taking money from anybody on the day of his arrest. He further denied seeing a police officer making a drug buy inside 832

Rittenhouse before his arrest, saying that he was in his apartment.[3] Appellant also stated that he was wearing a burgundy, black and turquoise jacket.

Appellant's testimony was therefore consistent with Williams' testimony that appellant was not in the lobby when Williams walked through carrying out the trash, and saw only Kelly there, very shortly before the police arrived to make the arrest. Appellant, moreover, completed his alibi by testifying that he had been in his apartment until approximately two minutes before the police arrived. (Police witnesses had testified the transaction occurred five minutes before the arrest team entered the building.)

## II.

The trial court refused defense counsel's request for an alibi instruction[4] on the ground that there was no evidence of alibi in the case. The reasoning behind the trial court's ruling is not entirely clear. On one hand, the trial court noted the testimony of both appellant and Ms. Edwards that appellant was in his apartment, but on the other hand the court also concluded, somewhat

---

2. In response to one question, Edwards said that appellant had left the apartment "about 10 or 15 minutes" before the arrest. Appellant in his testimony explained this by pointing out that she was in the bathroom and had been there for 10 or 15 minutes, that he was in the living room, and that she really wouldn't know whether he was still there or not. Edwards's own testimony did not make clear where she was when appellant left the apartment; she did say that she was in the bathtub when she heard a loud commotion outside the bathroom window and, looking out, saw appellant under arrest.

3. Appellant's testimony on this last point, given on cross-examination, was as follows:

Q. When you were inside 832 Rittenhouse, inside of the lobby, you never saw a police officer go in there and make a buy; is that your testimony?
A. Nah, I never, I never seen nothing like that, no, sir.
Q. Did you hear anything?
A. Did I hear anything?
Q. Yes.
A. As far as to when I was detained in the building or before I was detained?
Q. Before you were detained.
A. Nah. 'Cause I was in my apartment.

Q. How long were you upstairs in the lobby before you were arrested or detained?
A. I told you I can't be positive. I wasn't, I wasn't there no good—more than a good couple of minutes before—I forgot the officer's name where—Officer Kyle, I think it is, came in there with his gun.

4. See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.02 (3d ed. 1978):

Evidence has been introduced that the defendant was not present at the time when, and the place where, this offense was allegedly committed. The legal name for this defense is "alibi." The defense of alibi is a legitimate, legal and proper defense. The defendant may not be convicted of the offense with which he is charged unless the Government proves beyond a reasonable doubt that the defendant was present at the time when, and at the place where, the offense allegedly was committed.

If, after a full and fair consideration of all the facts and circumstances in evidence, you find that the Government has failed to prove beyond a reasonable doubt that the defendant was present at the time when, and the place where, the offense charged was allegedly committed, you must find the defendant not guilty.

inconsistently, that "they both agree that at the crucial times she was in the bathroom and he was in the lobby." [5] On our review of the record, that understanding of the testimony was erroneous. As a result, as elaborated below, the trial court erred in denying the requested instruction.

 Alibi instructions are not a precious commodity to be hoarded by the trial court; they should be granted liberally when there is any evidence to support them. "[W]hen a defendant requests an instruction on his theory of the case, including alibi, and when that instruction is supported by 'any evidence, however weak,' an instruction stating the substance of the defense *must* be given." *Gethers v. United States*, 556 A.2d 201, 204 (D.C. 1989) (emphasis in original) (quoting *Gray v. United States*, 549 A.2d 347, 349 (D.C. 1988)). Such instructions are necessary to ensure that the jury clearly understands that, in presenting an alibi defense, the defendant is not taking on the burden of proving his or her innocence, and that at all times the onus remains upon the government to prove beyond a reasonable doubt that the defendant was present at the scene of the crime at the time of its commission. Otherwise, there is a danger that the jury may simply weigh the defendant's alibi claim against the government's evidence and convict on a mere preponderance of the evidence. Even if the jury does not wholly believe defendant's alibi claim, the jury must still acquit if the defendant has raised a reasonable doubt as to his or her presence at the relevant place and time. *See Gethers*, 556 A.2d at 204 (quoting *Commonwealth v. Pounds*, 417 A.2d 597, 603 (Pa.1980)); *Greenhow v. United States*, 490 A.2d 1130, 1134 n. 4 (D.C.1985); *United States v. Alston*, 179 U.S.App.D.C. 129, 133, 551 F.2d 315, 319 (1976).

In this case, the government contends that an alibi instruction was not required because the defense evidence, if credited, still failed to "demonstrate[ ] the defendant's presence elsewhere for the entire period of time the government's evidence shows he was involved in criminal activity." *Greenhow*, 490 A.2d at 1134 (citation omitted). We disagree. Although appellant admitted being in the lobby shortly before the arrest team entered, he denied being there when the drug sale was made, saying that he was in his apartment instead. Furthermore, appellant said that he was in his apartment when he heard his half-brother, Rodney Williams, taking out the trash. Williams testified that when he walked through the lobby carrying the trash he saw neither appellant nor any drug transaction, although he did see Kelly. Williams also said that he saw the police enter the building very shortly after he was outside the building. Finally, appellant testified that he had not been in the lobby for more than "a good couple of minutes" before the police arrived and seized him (*i.e.*, at 6:00 p.m.). On this evidence, appellant could not have participated in a drug transaction at 5:55 p.m. because he could not have been

---

5. The trial judge issued this ruling in the course of the following colloquy with defense counsel:

 THE COURT: Now where is the evidence of alibi?

 DEFENSE COUNSEL: 5.02 That's the testimony of Ms. Edwards that he had been down in the apartment right before the arrest, and on Mr. Williams's part that Mr. Henderson was not present on the stairwell when Mr. Williams walked out.

 THE COURT: This is not an alibi. Now if you want to talk about no evidence having been presented, there's been absolutely no evidence that the man was anywhere other than where everyone agrees he was, which is inside 832.

 Now [Ms. Edwards], of course, says [appellant] was in his apartment. [Appellant], of course, says he was in his apartment. But they both agree that at the crucial times she was in the bathroom and he was in the lobby. So this is not an alibi case. I don't know what your theory of defense is, but it's not an alibi. I'm happy to give a theory-of-the-defense instruction, but there is no evidence of alibi in this case.

 DEFENSE COUNSEL: Your honor, her testimony was to the effect that he had left the apartment and then she hears the arrest outside. So even though she leaves a gap of time, still he's in the apartment and then there's the arrest of or the stopping of other people outside.

 THE COURT: I'm not going to give an alibi instruction.

in the lobby before 5:58 p.m.[6] This was sufficient evidence to require an alibi instruction.

■ It is true that a jury could take Ms. Edwards' testimony as indicating that appellant was in the lobby at the time when the drug sale allegedly took place, notwithstanding appellant's assertion to the contrary. But the weighing of such conflicting evidence remains uniquely the jury's task. In deciding whether to give an alibi instruction, the trial court should only consider whether the defense has presented any evidence in support of such a defense, not whether the defense evidence is coherent as a whole. The defendant's alibi testimony need not be corroborated by other witnesses, *see Gethers,* 556 A.2d at 204 (citing *Smith v. State,* 486 A.2d 196, 199–200 (Md.1989)), nor need it be consistent with other defense evidence or with the defense theory of the case, *see Gray,* 549 A.2d at 349 n. 2.[7] While the trial court need not give an alibi instruction when there is no evidence to support it, the court should also be wary of predigesting evidence before it goes to the jury.

■ Whenever the trial court improperly denies an alibi instruction, there is a "strong presumption of prejudice" to the defendant. *Gethers,* 556 A.2d at 204 (citing *Gray,* 549 A.2d at 351). Indeed, in *Gray,* we said:

> Although we need not adopt in this case a *per se* rule that the failure to give an alibi instruction when one is warranted can never be harmless error, we find it difficult to imagine a case in which such an error could possibly be harmless.

549 A.2d at 351. The government has not presented any argument as to why we should deem the trial court's error harm-

less in this case, nor do we see any reason to do so. The government's case against appellant was not overwhelming. There was a single identification of appellant, but no drugs or marked money were found on him. At least one other person, Kelly, was arrested in the lobby at the time, and he was the suspect with the marked money. Appellant's witnesses contradicted the government's evidence that appellant was wearing a black jacket when arrested, as the lookout broadcast had reported the seller was wearing. The police did find the stash in the open stairwell where the undercover officer had reported it to be, but it had no necessary connection with appellant.

Accordingly, we reverse appellant's conviction and remand the case for a new trial.[8]

*So ordered.*

---

6. The case is therefore distinguishable from *Greenhow,* where "neither appellant nor any of his witnesses testified that he was not at the scene of the crime at the time government witnesses placed him there." 490 A.2d at 1135.

7. This is not to say, however, that an alibi instruction is necessarily warranted where the defendant merely denies being present at the scene at the time of the crime without offering any further details as to his or her whereabouts. *See State v. Diamond,* 280 S.C. 296, 312 S.E.2d

550 (1984) (holding that alibi instruction was not warranted where defendant merely claimed that he could not recall his whereabouts at the time of the crime and testified only that he had never seen the undercover officer who allegedly purchased heroin from him).

8. Finding reversible error in the trial court's failure to give an alibi instruction, we need not consider appellant's claims of prosecutorial misconduct.