Edmond F. GRAVES, Appellant,

v.

UNITED STATES, Appellee.

No. 85–732.

District of Columbia Court of Appeals.

Argued Nov. 2, 1988.
Decided March 7, 1989.

Lisa Greenman, Public Defender Service, with whom James Klein and Scott Howe, Public Defender Service, were on the brief for appellant.

William M. Blier, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, and Elizabeth Trosman, Asst. U.S. Attys., were on the brief for appellee.

Before NEWMAN, STEADMAN and SCHWELB, Associate Judges.

NEWMAN, Associate Judge:

Edmond Graves was convicted of second-degree murder while armed and carrying a dangerous weapon. On appeal he alleges that the trial court committed reversible error by refusing to instruct the jury on the law concerning defense of others, despite his request for this instruction. We agree and reverse the conviction of second-degree murder. We affirm the conviction of carrying a dangerous weapon.

### I.

On the evening of October 1, 1983, an altercation between Edmond Graves and Willie Witherspoon occurred resulting in Witherspoon's death by a single stab wound in the chest. Witherspoon had come looking for his girlfriend, Geneva Truitt, at the Graves' apartment complex. Witherspoon encountered Graves in the entryway of the building and asked Graves if he knew where Truitt was. Although Graves knew Truitt was upstairs socializing with his pregnant wife, Sheila, he denied knowing Truitt's whereabouts and told Witherspoon he would have to go find out for himself.

Witherspoon went upstairs, where he found Truitt and Graves socializing, and requested that Truitt accompany him home. Truitt expressed her desire to stay and Witherspoon left the apartment without her. On his way out of the building, Witherspoon again encountered Graves and demanded to know why Graves had not told him that Truitt was upstairs. Graves responded that he was not Truitt's "keeper" and an argument ensued. Sheila Graves and Truitt heard the commotion and quickly came downstairs to determine its cause.

Inconsistent testimony was presented concerning who lunged at whom and the proximity of Sheila Graves to her husband when the stabbing occurred. Truitt testified for the government that as she reached the front door, Graves was standing just outside on the stoop, that Witherspoon was standing in the yard and that she took Witherspoon by the arm to lead him away from Graves. As the two walked away, Truitt recalled that Graves called Witherspoon a "punk motherfucker." On direct examination, Truitt stated that she saw Graves jump off the porch and come towards Witherspoon, who was facing Graves at this point, and that she then saw Witherspoon fall. On cross examination, she admitted that by the time she had turned around, Witherspoon had already been stabbed.

The accounts of other government witnesses, including George West and Shirlene Allen, support a version of the events that Witherspoon lunged at Graves and that Graves was standing near his pregnant wife when the stabbing occurred. West, who had been standing nearby when the argument began, testified for the government that he observed Truitt and Witherspoon walking away from Graves. Graves was at the edge of the stoop and was turning towards the apartment building to where Sheila stood, about eight to twelve feet away. Witherspoon then came towards Graves and West heard Sheila call to her husband to "look out." West testified that Graves turned but did not move towards Witherspoon and that he saw a knife in Graves' hand.

Shirlene Allen was standing in the hallway inside the front door when Truitt and Sheila Graves came downstairs. She observed Truitt pull Witherspoon away from Graves towards the street. According to Allen, Sheila Graves was standing behind Edmond when Witherspoon broke away from Truitt. Allen testified that she saw Edmond "push Sheila back and reach toward his right side and pull out a knife." Allen then moved out of the hallway and off the stoop and did not see Graves stab Witherspoon.

Sheila Graves testified for the defense that as Truitt and Witherspoon left, Edmond Graves was standing in the doorway beside her. Sheila Graves observed Witherspoon break away from Truitt, who had him by the hand, and come "running toward Edmond." At this time, Graves was facing the apartment building and had his back to Witherspoon. Sheila Graves called at him to "watch his back," at which point Graves turned in the direction of Witherspoon. Sheila Graves saw her husband stab Witherspoon and saw Witherspoon fall.

Edmond Graves did not testify. The defense presented testimony, however, that he was unusually worried about the health of his wife and unborn child. Sheila Graves was over eight months pregnant at the time of the incident. She was also diabetic and the Graves had previously borne a handicapped child. According to Marsha Wright, Edmond Graves' sister, the combination of these factors caused Graves great apprehension over the health of his wife and unborn child during Sheila Graves' pregnancy.

At trial, defense counsel's two requests for a jury instruction on defense of others were denied.

## II.

A defendant is entitled to a jury instruction on a "theory of the case that negates his guilt of the crime charged" if the instruction is supported by "any evidence, however weak." *Gray v. United States*, 549 A.2d 347, 349 (D.C.1988); *Stack v. United States*, 519 A.2d 147, 154 (D.C. 1986); *Fersner v. United States*, 482 A.2d 387, 392 (D.C.1984); *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978). Although the instruction need not be framed in the identical language requested, the failure to give an instruction where some evidence exists to support it constitutes reversible error. *Stack, supra,* 519 A.2d at 154 (citation omitted). These rules apply to the instruction on defense of third persons, where the force used by the intervenor was not excessive as a matter of law. *See Fersner, supra,* 482 A.2d at 391.

The government advances two arguments to support its position that the trial court properly refused defense counsel's request for the jury instruction on defense of third persons. First, the government asserts that no evidence existed to support an inference that Edmond Graves reasonably believed that Witherspoon posed a danger of death or serious bodily harm to Sheila Graves, or that she was under attack by Witherspoon. Alternatively, the government argues that even if the evidence sufficiently raised such an inference, the force used by Graves was excessive as a matter of law. We find both arguments unpersuasive.

An intervenor (or defender of third persons) is "entitled to use the degree of force reasonably necessary to protect [a third person] on the basis of the facts as

the intervenor, not the victim, reasonably perceives them." *Fersner, supra,* 482 A.2d at 391 (citations omitted). Testimony presented to the trial court could have supported an inference that Graves reasonably believed that Witherspoon posed a threat to his wife and unborn child while Sheila Graves was standing near him.

The eyewitness accounts vary concerning Sheila Graves' proximity to her husband. Geneva Truitt testified that Graves left the stoop where Sheila stood and stabbed Witherspoon in the front yard. George West testified, however, that Sheila Graves stood eight to twelve feet away from her husband but never left the stoop. Similarly, Shirlene Allen testified that Graves was close enough to "push [Sheila] back," and Sheila Graves maintained that Edmond Graves was never more than two feet away from her. The testimony of West, Allen and Sheila Graves, coupled with Marsha Wright's statements that Graves was unusually concerned about his wife's pregnancy because they had previously borne a handicapped child, suggests that Graves could have reasonably believed that Sheila or their unborn child could have been injured in an altercation between the two men near where Sheila stood.

In its brief, the government implies that because defense counsel presented only Sheila Graves' testimony to support the facts that Witherspoon ran toward Edmond and that she was in close proximity to her husband, that any inference concerning her proximity and vulnerability would be impermissibly speculative. Appellee's Brief at 7–8 (citing *Belton v. United States,* 127 U.S.App.D.C. 201, 207, 382 F.2d 150, 156 (1967)). Specifically, the government argues that:

> Appellant cites as evidence supporting an inference that he might have believed that Mrs. Graves was under attack, only her inconsistent and contradicted testimony that she was in close proximity to appellant, and the fact she was pregnant and, therefore, vulnerable. Such an inference is without sufficient evidentiary foundation, and is impermissibly speculative because it would require the jury to

fill in facts about which there is no testimony.

*Id.* (footnote and citation omitted). The government fails to acknowledge, however, that two of its witnesses, Allen and West, provided favorable testimony that may be used by the defense. *See Harris v. Plummer,* 190 A.2d 98, 99 (D.C.1963) (defense evidence may be advantageous to plaintiff); *Lopinto v. Haines,* 185 Conn. 527, 441 A.2d 151, 156 n. 11 (1981) ("There is no question that the court may make its finding on the basis of all the credible evidence, irrespective of the source from which that evidence comes") (citations omitted); 32A C.J.S. *Evidence* § 1046 (1964) ("[T]he weight and sufficiency of one party's evidence may generally be aided by evidence introduced by the adverse party").

The government overstates its case when it argues that "no evidence" existed that Graves moved into Sheila's path or that Witherspoon ran toward Sheila. Testimony by Allen and West suggests that Witherspoon came towards Edmond Graves and that Sheila was standing anywhere from twelve feet to an arm's length away. Indeed, Allen testified that Sheila stood behind her husband and that he was close enough to reach out and "push" Sheila "back." Under these circumstances a reasonable juror could find that Edmond Graves' actions were based on a reasonable belief that Sheila's pregnancy rendered her incapable of responding quickly to any impending harm directed at her or resulting from an altercation between Edmond and Witherspoon. As we stated in *Fersner, supra,* "the intervenor is entitled to use the degree of force reasonably necessary to protect the other person on the basis of the facts as the intervenor, not the victim, reasonably perceives them." 482 A.2d at 391. The government's reliance on the lack of evidence tending to show that Witherspoon was lunging at Sheila rather than Edmond in order to justify withholding the jury instruction is thus misplaced.

■ The government also places undue emphasis on Sheila Graves' perceptions of the events that unfolded around her. The government cites *Fersner, supra,* for the

proposition that "the purported victim's perceptions are relevant to determining what the intervenor could actually and reasonably have believed." Appellee's Brief at 8. The government argues that there is no direct evidence that Sheila Graves thought she was being attacked and therefore, the only reasonable inference to be drawn is that Witherspoon was attacking Edmond Graves. This is only a partial statement of *Fersner, supra,* however. The ultimate conclusion drawn in *Fersner* is that although the victim's perceptions are *relevant,* "when it comes to determining whether—and to what degree—force is reasonably necessary to defend a third person under attack, the focus ultimately must be on the intervenor's, not the victim's, reasonable perceptions of the situation." *Fersner, supra,* 482 A.2d at 392. To the extent that Sheila Graves' perceptions are relevant, she testified, over the government's objection, that she "felt scared" when she saw Witherspoon come running and that Witherspoon looked "very wild ... like he wanted to hurt somebody."

Graves need only have had a reasonable belief that his wife was in imminent danger of bodily harm. *See Fersner, supra,* 482 A.2d at 391–92 & n. 5. Sheila Graves was over eight months pregnant, her ability to move and react quickly was diminished, and there is testimony indicating that she was in the vicinity where she and her unborn child could have been injured. Thus, although we agree with the government that the trial court is not required to instruct the jury on a defense theory that indulges or encourages speculation about events or beliefs not supported by testimony, *Day v. United States,* 390 A.2d 957, 963 (D.C.1978), this is not such a case.

■ Finally, in order to justify an instruction on the defense of a third person, the appellant must "point to evidence fairly tending to show that he reasonably believed the particular deadly force he used to avert serious bodily harm to [the third person] was necessary, not excessive, under the circumstances." *Fersner, supra,* 482 A.2d at 393. We cannot say as a matter of law that the force used by Graves was excessive. But cf. *Fersner, supra,* 482 A.2d at 393 (finding repeated and deadly hatchet blows to head excessive as a matter of law). Witherspoon died as a result of a single stab wound in the chest. Testimony suggested that Graves was turning towards Witherspoon as Witherspoon rushed at him, and that Graves was on the stoop when Witherspoon approached. Thus, whether Graves could have repelled Witherspoon in a nondeadly manner or whether Graves' reaction was a necessary and spontaneous response given his raised position on the stoop and his belief that his nearby wife and unborn child were in imminent danger of serious bodily harm, is a question of fact for a properly instructed jury, not this court.

REVERSED AND REMANDED.

O.J.M., Appellant,