Thomas A. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1272.

District of Columbia Court of Appeals.

Submitted Feb. 16, 1989.
Decided March 21, 1989.

---

Robert L. Chaves, Washington, D.C., appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., and Michael W. Farrell, and Edith S. Marshall, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN and SCHWELB, Associate Judges, and REILLY, Senior Judge.

SCHWELB, Associate Judge:

Claiming that his actual role in a contretemps with the police four and a half years ago was that of a good Samaritan, Thomas A. Jones appeals from his conviction of assaulting and interfering with a police officer (APO) in violation of D.C.Code § 22–505(a) (1981). He contends that the trial judge committed reversible error in refusing to instruct the jury with respect to the circumstances under which an individual has the right to use reasonable force in defense of a third person. We agree with Jones that, on the evidence presented, he was entitled to such an instruction and was prejudiced by its exclusion from the judge's charge. Accordingly, we reverse his conviction and remand the case for a new trial.

I

The government presented evidence tending to show that on August 11, 1984, at approximately 11:40 p.m., Investigator Rudolph Goddard and Sergeant John Hickey of the Metropolitan Police Department were on routine patrol in the area of North Capitol Street. They were wearing casual clothes and travelling in an unmarked cruiser. While they were stopped at a traffic light, they observed an unknown black male (hereinafter "the buyer") apparently purchasing illicit drugs. Goddard stepped out of the vehicle, identified himself as a police officer, and directed the buyer to stop. The buyer immediately placed a small white object, presumably the contraband he had just purchased, into his mouth and attempted to swallow it. Goddard tried to grab him by the throat, but was unable to do so and only managed to seize hold of the buyer's jacket.

According to Investigator Goddard, Jones, who had been sitting on the steps of a nearby house, joined the affray by grabbing Goddard from behind, with his forearm around Goddard's throat, pulling him back and choking him. With the buyer struggling in front of Goddard and Jones intervening from behind, the buyer's jacket was torn. The buyer opportunistically slipped out of the tattered garment that had kept him within the officer's grasp and made his escape through an alley, leaving the police with a less than perfect piece of clothing but no drugs and no drug defendant. Whether the buyer swallowed the apparent contraband or was able to recover it for ingestion in a different fashion is not clear from the record. In any event, once the buyer had broken from Goddard's grasp, Jones released Goddard and began to walk away. Uniformed reinforcements soon arrived, and Jones was apprehended.

By Goddard's account, Jones was fully aware from the beginning of the encounter that Goddard was a police officer. In fact, Jones demanded to know why Goddard was arresting the man when "he didn't do nothing." Although he claimed that Jones attempted to reach for his service revolver, Goddard acknowledged that Jones was not

attempting to hurt him and let him go as soon as the buyer was free. Investigator Goddard's account was corroborated in substantial part by the testimony of Sergeant Hickey.[1]

Testifying in his own behalf, Jones described his perception of the incident as one in which he came to a stranger's aid when the stranger appeared to be the victim of a violent street crime. He related that he observed two men apparently robbing and choking the man whom we have described as the buyer. Jones testified that the buyer was gasping for air, choking and slobbering, and unable to talk. Meanwhile, one assailant had him in a choke hold and the other was going through his pockets. Jones claimed that he had asked the apparent robbers what they were doing. Receiving no reply, he attempted to pull one of them off their victim.

Responding to a question as to why he did not call the police rather than becoming involved in the fight, Jones explained that

if I waited for the police he [Goddard] would probably have choked him to death. This fellow was in bad need of help.

Jones denied that the officers had identified themselves as police, remarking that "they weren't acting in any fashion of police." He also denied that he knew the buyer or had any connection with him.

## II

The principal legal issue addressed by the parties at trial concerned the instructions to be given with respect to Jones' theory of defense. Jones' counsel stated at the outset of the proceedings that

the defense's theory is that Mr. Jones was acting in the defense of a third person, and that at the time he acted he had no reason to believe the persons whom he assaulted were individual police officers.

Counsel maintained the position throughout the trial that the judge should instruct the jury in accordance with District of Columbia Criminal Jury Instruction No. 5.20 (3d Ed.1978) (defense of a third person). The prosecutor contended that the instruction was inappropriate because

Mr. Jones himself testified that he did not observe the officers hit, kick or throw any blows or punches at all. This defendant simply indicated the officer had the defendant in a choke hold commonly used to detain persons on the streets. Your Honor, the Government submits that that is not sufficient to reach excessive force which would entitle the suspect then to somehow try to respond with the use of force himself.

The judge found the issue to be "very interesting" and even "unique," but concluded as follows:

My problem on giving the defense of a third party [is that] I do not see anything in the testimony either from your own client's testimony, or from the police officer's testimony, that would say that X, the suspect, would be entitled to use any force whatsoever. Not from what the police said he told him to stop and he wouldn't. He would have no right to resist that arrest.

Your client said he didn't know what in the world happened. I just came up and saw some people—I thought they were beating him—I thought they were robbing him. And he is not entitled to a third party defense unless the third party himself would be entitled to it, and I don't see that he is entitled to it.

The judge added that the jury would be required to speculate in order to find that the police were using excessive force against the buyer, and that when Jones came upon the scene he could not know what had occurred previously and whether the conduct of the police was justified.

The judge did instruct the jury, in substantial part, as to the defense theory of the case:

1. Hickey testified that a woman who turned out to be Jones' sister had grabbed hold of him and tried to prevent him from coming to Investigator Goddard's assistance. The sister was originally scheduled to testify in Jones' behalf, but she was advised of her privilege against self-incrimination and never took the stand.

The theory of the defendant is that at no time did he know that the persons who were out there that night were police officers, and that he thought they were robbing another person and that he came to the aid of that person.

In explaining the elements of the offense with which Jones was charged, the judge told the jurors that the government must prove that the defendant acted "without justifiable and excusable cause." As the judge declined to give the defense's requested instruction, however, the jury was never told when a defendant charged with assaultive conduct may justify his actions upon the ground that he came to the defense of a third person. The jury, in other words, received no explanation as to what circumstances would constitute the "justifiable and excusable cause" to which the judge alluded in detailing the elements of the crime.

### III

■ This court has had recent occasion to revisit the law applicable to a request by the defendant for an instruction as to the defense of a third person. In *Graves v. United States*, 554 A.2d 1145 (D.C.1989), this court stated:

A defendant is entitled to a jury instruction on a "theory of the case that negates his guilt of the crime charged" if the instruction is supported by "any evidence, however weak." *Gray v. United States*, 549 A.2d 347, 349 (D.C.1988); *Stack v. United States*, 519 A.2d 147, 154 (D.C.1986); *Fersner v. United States*, 482 A.2d 387, 392 (D.C.1984); *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978). Although the instruction need not be framed in the identical language requested, the failure to give an instruction where some evidence exists to support it constitutes reversible error. *Stack, supra*, 519 A.2d at 154 (citation omitted). These rules apply to the instruction on defense of third persons, where the force used by the intervenor was not excessive as a matter of law. *See Fersner, supra*, 482 A.2d at 391.

*Graves, supra*, 554 A.2d at 1147. The court also reemphasized that "when it comes to determining whether—and to what degree—force is reasonably necessary to defend a third person under attack, the focus ultimately must be on *the intervenor's, not the victim's*, reasonable perceptions of the situation." *Ibid.* at 1149; citing *Fersner, supra*, 482 A.2d at 392 (emphasis added). As the court stated in *Fersner*, there is "no rational basis for permitting an intervenor to come to the defense of a third person, with all the attendant risks, but conditioning that right on the victim's rather than the intervenor's reasonable perceptions." Accordingly, in determining whether Jones was entitled to an instruction as to the right to come to the defense of a third person, the proper inquiry was whether there was any evidence, "however weak," from which the jury could reasonably infer that, from *Jones'* reasonable perception of the situation, the use of force to protect the buyer was justified.

■ Although the government suggests in its brief on appeal that the testimony supporting the requested instruction in this case was not sufficiently credible, the appropriateness of giving or not giving such an instruction turns on the existence of *any* evidence, and not on the adversary's (or even the judge's) assessment of its credibility. In the present case, Jones testified that, as the situation appeared to him, two men were assaulting and apparently robbing a third. The apparent victim was in dire straits as a result of being choked. He was gasping for breath, unable to talk, and "slobbering." His assailants declined to explain what they were doing and, according to Jones, did nothing within his hearing to disclose their connection with the Police Department.

Although a reasonable person might well disbelieve Jones—police officers under attack would not ordinarily be expected to conceal their line of work from an assailant—that is immaterial to the issue here. Jones' testimony is "some evidence" that, from his "reasonable" perspective, his entry into the affray to protect the buyer was the act of a good Samaritan coming to the

rescue of a victim of violent crime. That being so, Jones had the right to have the jury instructed as to the circumstances under which he might lawfully intervene, and to a decision by the jury as to whether such circumstances existed in his case.

## IV

■ The government claims that if the judge's failure to give the defense of a third person instruction in this case was error, it was harmless. The government cites the fact that the judge did instruct the jury that an officer is not permitted to use more than reasonable force in effecting an arrest. We disagree with this assessment.

Appellate courts do not readily find harmless a trial court's refusal to instruct with respect to the defense theory of the case. *See Gray, supra,* 549 A.2d at 351. Jones contends that the constitutional standard of "harmless beyond a reasonable doubt"[2] applies; the government urges the contrary.[3] We need not resolve this issue because, even assuming, *arguendo,* that the government is correct, we are unable to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Jenkins, supra,* 506 A.2d at 1124, quoting from *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Contrary to the government's argument, the problem in this case is not that the jury might have incorrectly believed that the officers were entitled to use unrestricted force against the buyer. If that were the issue, the judge's correct instruction with respect thereto would have resolved it. The prejudice which Jones suffered, however, was that the jury was never told that Jones had the right to come to the buyer's defense if such a course of action was appropriate from his (rather than the buyer's) reasonable perspective.

The government also argues that the jury's verdict establishes both that Jones

knew that Goddard was a police officer and that Jones' version of the incident—that Goddard had a choke hold on the buyer—was not correct. It may well be, in light of the verdict, that the jurors would have convicted Jones even if the scope of the right to come to the aid of a third person had been explained to them. It is also reasonably possible, however, that a jury which had been apprised of that right would have reached a different verdict. Accordingly, Jones is entitled to a new trial.

*Reversed and Remanded.*

REILLY, Senior Judge, dissenting:

In my view, the instructions given by the trial judge adequately put the jurors on notice that they were required to determine whether or not the appellant had reasonable grounds for believing that he was witnessing an assault by robbers rather than a forcible arrest by police officers, and therefore justified in coming to the aid of the victim. The judge's description of the defense theory was plainly a fair one. His later admonition to the jury that it should not convict unless the government proved that the accused acted "without justifiable and excusable cause" was obviously a reminder of his previous reference to the defense theory.

In this context any further elaboration of what constituted reasonable conduct under the circumstances would have been superfluous. The court had already pointed out that to determine guilt, the jurors would have to find "that the actions defendant took were deliberate and intentional and not by *accident* or *by mistake.*"

While the standard instructions are useful reference tools when a trial court is consulting with lawyers for the parties prior to giving his charge, their existence does not prevent a court from modifying or paraphrasing the standard wording for the clarification of a jury. I think the majority opinion attaches undue weight to the trial

**2.** *See, e.g., Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**3.** *See, e.g. Jenkins v. United States,* 506 A.2d 1120, 1124 (D.C.), *cert. denied* 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986).

judge's questionable reason for not giving the requested instruction. Certainly the jury was unaware of this comment during its deliberations. In short, I feel the record calls for affirmance.