Robert L. BIEDER, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CM–1657.

District of Columbia Court of Appeals.

Argued March 14, 1995.
Decided July 13, 1995.

Jaclyn S. Frankfurt, Public Defender Service, with whom James W. Klein, Public Defender Service, Washington, DC, was on the brief, for appellant.

Preston Burton, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, DC, were on the brief, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and BELSON, Senior Judge.

Opinion for the court by Associate Judge SCHWELB.

Dissenting opinion by Associate Judge RUIZ at 190.

SCHWELB, Associate Judge:

Robert L. Bieder was convicted by a jury of carrying a pistol without a license,[1] unlawful possession of an unregistered firearm,[2] and unlawful possession of ammunition for an unregistered firearm.[3] The prosecution was instituted after Bieder attempted to hand a pouch containing a loaded pistol to a U.S. Capitol Police Officer at the entrance to the United States Capitol.

On appeal, Bieder contends that the trial judge erred by declining to instruct the jury with respect to the federal Firearms Owners' Protection Act (FOPA), 18 U.S.C. §§ 921 *et seq.*, on which Bieder based a part of his theory of the case, and by precluding Bieder from presenting a defense based on the FOPA. We agree with Bieder and reverse his convictions.

## I.

The relevant evidentiary facts are not in dispute. Bieder owns a small plumbing supply business which is located below his home in the Bronx, N.Y. In October 1992, following numerous burglaries and armed robberies at his store, Bieder secured a New York permit to carry a handgun. He subsequently purchased a pistol from a federal firearms dealer.

On Friday, July 16, 1993, Bieder drove with his wife and daughter, who was then seven years of age, to Virginia for a weekend visit with friends and relatives. On Sunday, July 18, Bieder began the return journey to New York City. En route, he drove into Washington, D.C. and decided to show his wife and daughter the Capitol. Because his wife is disabled, Bieder parked in the handicapped parking area, which is approximately 100 feet from the Capitol building.

While the family was travelling to and from Virginia, Bieder's handgun was unloaded, and both the weapon and an ammunition clip were in the locked trunk of his car. Upon his arrival at the Capitol parking area, however, Bieder removed the pistol from the trunk, loaded his ammunition clip into the pistol, and placed the weapon, which now had a round in the chamber, into a pouch which he wore around his waist. Bieder testified that he took this action because the handbook provided to him by the New York City police department stated:

> Firearms are not to be left in the glove compartment or trunk of autos or [in] any place where a thief or other person may readily obtain them.

Bieder then walked to the Capitol. Upon entering the building, and as he was about to pass through a metal detector, he handed his New York permit and the pouch to a Capitol police officer. Bieder explained that the pouch contained a handgun and that he had a New York permit to carry the weapon. In response to a question by the officer, Bieder acknowledged that he did not have a District of Columbia license. After consulting with one of his superiors, the officer placed Bieder under arrest. The instant prosecution followed.

---

1. D.C.Code § 22–3204 (1989).

2. D.C.Code § 6–2311 (1989).

3. D.C.Code § 6–2361 (1989).

## II.

At trial, Bieder's defense was "innocent possession." As reflected in his "theory of the case," that defense consisted of two parts which, when taken together, were designed to account for the entire period during which he was in the District of Columbia.

First, Bieder contended that from the time that he entered the District until he removed the pistol from his car, his conduct was lawful under the provisions of the federal FOPA. That statute provides, in pertinent part, that notwithstanding any state or local law, a person may lawfully transport a weapon between two states in which it is lawful to carry the weapon, so long as the weapon is unloaded and inaccessible from the passenger compartment of the car. 18 U.S.C. § 926A. Bieder's attorney asked the judge to instruct the jury, in that connection, that

> federal law allows a person to transport a handgun and ammunition through the District of Columbia, so long as the person is travelling from one state where it is legal to carry and possess the gun to another state where it is legal to possess and carry the gun, so long as the gun is transported unloaded and in the trunk of the car. In addition, New York City allows a person to possess and carry a gun with a valid permit, and Virginia state law allows a person to openly carry a handgun unless he is a

convicted felon or a juvenile. When considering whether the government has proven beyond a reasonable doubt that Mr. Bieder was not [in] innocent possession [of] his handgun and ammunition, you are entitled to consider whether Mr. Bieder was intending to follow these laws and regulations on July 18.

The second part of the defense theory was that even after Bieder removed the pistol from the car, he did not violate the District's gun control laws because he lacked criminal intent and because he was bringing the pistol to a law enforcement officer. Bieder asked the judge to instruct the jury, in pertinent part, that

> Mr. Bieder is not guilty of the offenses charged here if he lacked any criminal purpose in carrying or possessing the gun and ammunition and if he intended to take the gun and ammunition as soon and as directly as possible to law enforcement.

■ The prosecutor agreed at trial—perhaps improvidently—that Bieder was entitled to present an "innocent possession" defense, and he interposed no objection to the proposed instruction regarding Bieder's claim that he intended to surrender the weapon to the Capitol Police officer.[4] The judge instructed the jury accordingly.

4. At oral argument in this court, the government took the position that, on the record before the trial court, Bieder was not entitled to present an innocent possession defense at all. We note in that connection that "[i]n order to assert the defense ... an accused must show not only an absence of criminal purpose but also that his possession was excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement." *Hines v. United States*, 326 A.2d 247, 248 (D.C.1974). The typical situation in which an innocent possession defense may properly be invoked arises where the "defendant's possession stemmed from his civic effort to aid law enforcement by turning [a] newfound pistol over to the police." *Id.* at 249.

In light of the government's debatable concession, we do not reach the question whether Bieder's delivery of the pistol to the officer could reasonably be viewed as meeting the *Hines* test. Although an appellate court may sustain a judgment on any valid ground, *see, e.g., Craig v. United States*, 551 A.2d 440, 440 n. 4 (D.C.1988)

(affirming a criminal conviction on grounds not considered by the trial judge), we will do so only where the appellant has had an adequate opportunity to respond to the appellee's contentions, and where there has thus been no procedural unfairness. *Sheetz v. District of Columbia*, 629 A.2d 515, 519 n. 5 (D.C.1993); *cf. Chiarella v. United States*, 445 U.S. 222, 236, 100 S.Ct. 1108, 1119, 63 L.Ed.2d 348 (1980) ("we cannot affirm a criminal conviction on the basis of a theory not presented to the jury").

When this case was tried, Bieder's attorneys had the right to rely on the prosecutor's concession. They never had the occasion or opportunity, in the trial court, to meet the contention now being made by the government, or to adapt their strategy to it, especially in regard to the determination whether Bieder should plead guilty or go to trial.

The question whether the innocent possession doctrine fits these facts may arise again at a new trial in the event the government should decide to prosecute once more. If this occurs, the issue can be decided with appropriate briefing and argument by both sides.

The prosecutor objected, however, to any instruction regarding the FOPA. He contended that the federal statute was irrelevant and that any reference to it would be confusing to the jury and prejudicial. The judge ultimately sustained the government's position, apparently on the ground that the FOPA did not constitute a complete defense to the charges against Bieder and might confuse the jury. Thus, although the defense was permitted to present evidence showing that Bieder had a New York permit [5] for his pistol, the jury never learned of the existence of a federal enactment which rendered lawful Bieder's conduct in initially bringing the weapon into the District as a part of his interstate travel.

Bieder was found guilty of all charges. This appeal followed.

### III.

It is undisputed in this case that Bieder was carrying a loaded pistol, that he had no District of Columbia license for it, and that he possessed an unregistered firearm and ammunition. His sole defense to these charges was that he lacked criminal intent and that he intended to "surrender" the pistol to law enforcement authorities as soon as possible.[6] The prosecutor, the trial judge, and the defense attorney all explicitly agreed that this was the issue for trial.

■ The parties likewise agree that a defendant is entitled to an instruction which fully and fairly presents his theory of the case. *Stack v. United States,* 519 A.2d 147, 154–55 (D.C.1986); *see also Jones v. United States,* 555 A.2d 1024, 1026–28 (D.C.1989). A significant part of Bieder's theory of the case

was his contention that his entry into the District of Columbia, with the pistol and ammunition locked in his trunk, was lawful under the provisions of the FOPA. Bieder's point is made well in his brief in this court:

> Without instruction on the federal statute, the jury was left to believe that appellant engaged in unlawful conduct by entering the District of Columbia with a gun in his trunk. This would certainly affect the jury's determination of whether appellant "lacked any criminal purpose" in possessing the gun at the point that he handed it to the Capitol police officer, as well as its decision about whether appellant took the gun and ammunition to the Capitol police officer "as soon and as directly as possible." Criminal Jury Instructions for the District of Columbia, No. 4.71 (4th ed. 1993).

The government argues that the prosecution introduced no evidence regarding Bieder's activities prior to his arrival at the Capitol building, and that prior events were, at most, of marginal consequence. But even if we focus solely on Bieder's actions at the Capitol,[7] the jury's prime task was to determine whether Bieder harbored a criminal intent at that time, and whether he intended to deliver the pistol to Capitol Police officers as soon as he could. As a result of the exclusion from the record of any information about the FOPA, the jurors were inevitably left with the impression that Bieder was in violation of the law from the moment that he entered the District of Columbia. An impartial juror might reasonably question a defendant's professions of benign intent if it appeared that the man making such an appar-

---

**5.** The judge correctly instructed the jury, however, that the government was required to prove "that the defendant was not licensed to carry the pistol *by the Chief of Police of the District of Columbia.*" (Emphasis added).

**6.** Bieder's attorney told the trial judge that his client hoped to "surrender [the pistol] to [officers], *pick it up, take it back, put it back in the trunk of his car* ... and go finish his trip back home to New York, which he is allowed to do under the Federal statute." (Emphasis added). Because events never reached that stage, we are not required to decide whether it would be compatible with the defense of "innocent possession"

for Bieder to intend to take the pistol *from* the officer and carry it back to his own vehicle for the return journey to New York.

**7.** The information charged Bieder with carrying a pistol without a license and related offenses "on or about July 18, 1993." The jury could thus properly have convicted Bieder simply on the basis of the proof that he entered the District with a pistol and without a license. "We may not uphold a criminal conviction if it is impossible to ascertain whether the defendant has been punished for noncriminal conduct." *Chiarella, supra,* note 4, 445 U.S. at 237 n. 21, 100 S.Ct. at 1119 n. 21 (citations omitted).

ently self-serving claim had been engaged in criminal conduct moments earlier.

■ This court has recognized that the admission of evidence of uncharged criminal conduct may seriously prejudice the jury against a defendant. *See generally Thompson v. United States,* 546 A.2d 414, 418–21 (D.C.1988); *Drew v. United States,* 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). Indeed, "[i]n light of the recognized potential for evidence of other crimes to deny the defendant a fair trial, such evidence is presumptively inadmissible." *Thompson, supra,* 546 A.2d at 419.

■ In most instances, *Drew, Thompson,* and similar decisions are invoked to protect a defendant from the disclosure to the jury of prior bad acts which he actually committed.[8] In this case, the situation is somewhat akin to that presented in conventional "other crimes" cases, but the effect of the court's ruling is in some respects even more unfair. Accurate information regarding the accused's prior criminal conduct, while prejudicial, is also logically probative; courts exclude it because its prejudicial character is thought in most cases to outweigh its probative value. *See Thompson, supra,* 546 A.2d at 418 (citations omitted). The creation of an *erroneous* impression that the accused previously violated the law, on the other hand, has no probative value whatsoever.

The exclusion from the trial of any reference to Bieder's rights under the FOPA made it appear that Bieder had acted unlawfully by entering the District of Columbia with a pistol *when in fact he had not then violated the law at all.* In *Thompson,* the defendant's conviction was reversed because the jury was truthfully told of a prior crime which the defendant had committed. Bieder, on the other hand, faced a jury which may have been led to believe, incorrectly, that he had engaged in criminal conduct.

Moreover, this misleading incriminatory impression about Bieder's earlier actions re-

lated to the time period which immediately preceded the event on which the government says that it focused, namely, Bieder's entry into the Capitol. Bieder's claim of innocent possession and blameless intent was thus presented to jurors who, having been denied relevant information as to the FOPA, had every reason to believe that Bieder had been intentionally violating the District's gun control statute until moments before his encounter with the Capitol Police.

We also agree with Bieder's contention that the government exploited the restriction on Bieder's defense. In his rebuttal argument, the prosecutor reiterated that Bieder had no District of Columbia license or registration certificate. He then continued as follows:

> And so the question is whether he was just trying to hand it in to the law enforcement authorities. *There was no evidence brought out in the defense that he made any attempt to contact the Metropolitan Police or any other police officials before—*
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: *—before he entered the District of Columbia.* He sought to come into this city, which has its own laws concerning guns, and he violated those laws. And he maintains that in order to work in a sightseeing trip to the Capitol he would somehow hand over the gun to Officer Calvetti when he enters the Capitol.

(Emphasis added). Over defense objection, the prosecutor was thus permitted to depict Bieder's entry into the District with the pistol, without first checking with local authorities, as illegal. Actually, of course, Bieder's entry was protected by the FOPA, but the jury never learned of this potentially significant fact.[9]

■ Under these circumstances, we are compelled to conclude that the restrictions

---

8. In order to introduce evidence of another crime under any of the *Drew* exceptions, the prosecutor must prove by clear and convincing evidence that the other crime was actually committed by the defendant. *Ali v. United States,* 520 A.2d 306, 310 n. 4 (D.C.1987).

9. According to the brief for the United States, "the government's case and its arguments did not suggest that appellant's entry into the District of Columbia with an unloaded pistol in the trunk of his car was illegal, and it is thus fanciful to contend that the jury convicted appellant on that basis." This sentence cannot readily be reconciled with the rebuttal argument quoted above.

placed by the trial judge on the presentation of the defense case require reversal of Bieder's convictions. Where, as here, the judge apprised the jury of a part of the defendant's theory of the case, but declined to charge on another significant part of it, "[a]ppellate courts do not readily find [the error] harmless." *Jones, supra,* 555 A.2d at 1028.

It is true that the judge admitted evidence tending to show that Bieder's intent was benign. The jury learned, *inter alia,* that he had a New York permit for the weapon, that he obtained it because he and his family had been victims of crime, and that his entry into the District was incidental to a visit with relatives in Virginia.[10] But in this case, the jurors could have concluded, inaccurately, that shortly before Bieder took the pistol from the trunk of his car and walked up to the Capitol, he had been engaged in criminal conduct in the District of Columbia. Empirical studies have shown, and our decisions have recognized, that jurors are significantly more likely to convict a defendant if they are advised that he has previously committed a crime. *See Thompson, supra,* 546 A.2d at 425; *Byrd v. United States,* 614 A.2d 25, 31 & n. 12 (D.C.1992). Assuming, without deciding, that the error was not of constitutional magnitude, *cf. Jones, supra,* 555 A.2d at 1028, in which we found it unnecessary to decide that question,[11] we are unable to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

## IV.

For the foregoing reasons, each of Bieder's convictions is reversed. The case is remanded to the trial court for any further proceedings which may be deemed appropriate.

*So ordered.*[12]

RUIZ, Associate Judge, dissenting:

I agree with the majority's ruling that the trial court erred in refusing to instruct the jury regarding the interstate gun transportation statute because it was relevant to the defense of innocent possession. I disagree with the majority's conclusion that the error was not harmless.

I think the court could say with fair assurance and even assuming error of constitutional magnitude, beyond a reasonable doubt that the jury's verdict was not swayed by a lack of knowledge regarding the lawfulness of Bieder entering the District with a gun in the trunk of his car. There was uncontroverted evidence that all elements of the offense in this case were met: the defendant knowingly carried an operable gun and ammunition and was not licensed to do so. The trial court gave the jury an accurate instruction on the defense of innocent possession, without objection from the parties. Hence, the only real issue was Bieder's intent in carrying the weapon to the Capitol. Whether Bieder was or was not lawfully permitted

The government argues that "appellant did not raise this issue before the trial court and has thus waived it." But the record shows, as we have seen, that the defense did in fact object to the prosecutor's argument regarding Bieder's entry into the District with a pistol, and that the judge overruled the objection. Although the objection might have been articulated more specifically, interruption of closing argument is not encouraged. Moreover, the basis for the objection was apparent in light of the judge's decision to exclude evidence and argument regarding the FOPA.

10. Notwithstanding the exclusion from the trial of any reference to the FOPA, the prosecutor did not object to the admission of this "benign intent" evidence. Accordingly, we have no occasion to decide whether, as this case was tried, circumstances of this kind were relevant to the

question of guilt or innocence. We note that the misdemeanors with which Bieder was charged are "general intent" offenses. *See Bsharah v. United States,* 646 A.2d 993, 994–1000 (D.C. 1994).

11. The government is required to prove that any constitutional error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

12. Nothing in this opinion is to be construed as suggesting that the prosecution's evidence was insufficient to support Bieder's convictions, especially in light of Bieder's loading of his weapon. The appeal was based on restrictions on the defense theory of the case and related omissions from jury instructions, and not on any claim of evidentiary insufficiency. Our decision is limited accordingly.

to transport the gun between states in the trunk of his car was of marginal relevance to that issue. Bieder was able to introduce a great deal of evidence more directly bearing on the issue of his intent.[1] The prosecution was able to impeach that evidence with the evidence that he loaded the gun before approaching the Capitol.[2] Therefore, although I believe Bieder should have been allowed a fuller presentation of his defense, I think it highly unlikely that the jury's verdict in this case was affected by the lack of information concerning the lawfulness of Bieder's initial entry into the District.

1. Although Bieder was precluded from introducing evidence concerning the federal statute governing transportation of firearms, he was permitted to testify that he removed the gun from his trunk at the Capitol for safety reasons, that he had a New York City gun permit, that his reasons for owning a gun stemmed from several robberies and burglaries of his business, that he kept the gun unloaded in the trunk of his car during the trip to Virginia, and that the reason he took the gun to Virginia was to do some shooting with his daughter's godfather. He was also able to explain that he stopped in the District because his family was hungry and he wanted to show his daughter the Capitol. Thus, he was able to introduce substantial evidence regarding the circumstances surrounding the alleged offense, much of which bore on his intent.

2. Bieder testified that he loaded the gun when he took it out of his car. He conceded on cross-examination that by loading the gun, he increased the chance that it would be used unlawfully.

The record also suggests that the jury focused on Bieder's conduct at the Capitol, not on the road. In the course of harmless error analysis, we may consider evidence of record concerning the jury deliberations. *See Jackson v. United States*, 600 A.2d 90, 94 (D.C.1991) (jury note). During deliberations, one of the matters the jury apparently focused on quickly was Bieder's testimony regarding the loading of the gun. The jury started deliberating at about 12:20 p.m. At 12:38 p.m., the jury delivered a note requesting to see the gun and ammunition. The same note asked whether a bullet automatically enters the chamber when the clip is inserted. (During the government's case, one of the witnesses testified that the gun "was loaded, fully loaded, one in the chamber and thirteen in the magazine.") At about 2:05 p.m., after a break for lunch, the court instructed the jury that there was no evidence on whether the bullet would have entered the chamber automatically and that the jury should not speculate regarding matters not in evidence. At 4:40 p.m., the jury reported a verdict had been reached.