Robert L. **BIEDER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 96–CM–559.

District of Columbia Court of Appeals.

Argued Sept. 18, 1997.
Decided Feb. 19, 1998.

---

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Theodore C. Marcus, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Thomas C. Black, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Robert L. Bieder appeals from his conviction, after a retrial, of carrying a pistol without a license ("CPWL"), D.C.Code § 22–3204(a) (1996), and two related offenses.[1] While traveling from Virginia to New York, he made a stop in the District to visit the Capitol building. He was arrested when he handed a pouch containing a loaded pistol to a U.S. Capitol Police officer at the checkpoint upon entering the Capitol building.

In this second appeal, Bieder contends that the trial judge erred by precluding him from presenting a defense of "innocent possession."[2] We affirm the trial court's ruling that, on the facts as recited by Bieder himself, the innocent possession defense was not available to Bieder as a matter of law.

## I.

The facts of this case are set forth in our consideration of Bieder's appeal from his first trial. *Bieder I, supra* note 2, 662 A.2d at 186. Briefly, this case arose on July 18, 1993, when Bieder stopped in Washington, D.C., while driving from Virginia to New York. Bieder was carrying an unloaded pistol in his trunk. He was licensed to carry the pistol in New York, where he resides, and he had brought it to Virginia to do some recreational shooting. Bieder drove into the District of Columbia because he wanted to show the Capitol building to his seven-year-old daughter, who was accompanying him. Bieder parked approximately one hundred feet from the Capitol building.

Bieder testified that after parking the car he decided to deliver his gun to a Capitol police officer for "safekeeping." A handbook issued to him by New York authorities had cautioned against leaving firearms in unattended vehicles. Bieder unlocked the trunk and removed the gun. He loaded thirteen rounds of ammunition in the magazine, and placed a fourteenth round in the pistol's chamber. He then placed the loaded pistol into a zippered pouch and approached the Capitol.

Bieder entered the building through a visitors' entrance and encountered a police officer manning a metal detector. Bieder presented his New York permit and the pouch containing the loaded pistol to the officer, and he identified the contents. Bieder ac-

---

1. Unlawful possession of an unregistered firearm, D.C.Code § 6–2311 (1996), and unlawful possession of ammunition for an unregistered firearm, D.C.Code § 6–2361 (1996). Both parties agree that if the defense of innocent possession is available for the offense of CPWL, it would also apply to the remaining charges.

2. Bieder was originally tried before a jury and convicted in 1993, but we reversed his convictions and remanded his case in *Bieder v. United*

*States,* 662 A.2d 185 (D.C.1995) (*"Bieder I"*). The sole ground we addressed on that appeal was the trial court's failure to give an instruction on the federal Firearm Owners' Protection Act ("FOPA"), 18 U.S.C. §§ 921 *et seq.* (1994). We specifically left open the question whether the innocent possession defense was available to Bieder on the facts of this case. *Bieder I, supra,* 662 A.2d at 187 n. 4.

knowledged that he was not licensed to carry the pistol in the District of Columbia. After consulting with his superior, the police officer arrested Bieder for committing the offenses that are the subject of this appeal.

On remand after our decision in *Bieder I*, *supra* note 2, 662 A.2d at 185, Bieder proposed a jury instruction that incorporated the defense of innocent possession, *viz.*, "Mr. Bieder is not guilty of the offenses charged here if he lacked any criminal purpose in carrying or possessing the gun and ammunition and if he intended to take the gun and ammunition as soon and as directly as possible to law enforcement." *See* Criminal Jury Instructions for the District of Columbia, No. 4.71(B) (4th ed.1993). The trial court ruled that Bieder could not present the defense of innocent possession to a jury. In an oral ruling, the trial court emphasized that while FOPA protected Bieder's entry into the District of Columbia, the innocent possession defense did not protect him after "he took the gun out of his trunk, loaded it, . . . and was on our public streets." Bieder then agreed to a bench trial on a stipulated record, after which he was found guilty on all three counts and again sentenced to a fine of $50 per count.[3]

## II.

As we have repeatedly held, carrying a pistol without a license is a general intent crime and has no scienter requirement. *See, e.g., Bsharah v. United States*, 646 A.2d 993,

999 (D.C.1994); *Mitchell v. United States*, 302 A.2d 216, 217 (D.C.1973); *see also Bieder I*, *supra* note 2, 662 A.2d at 190 n. 10. Since 1932, there has been no statutory requirement that the accused intend to use the weapon for an unlawful purpose, *see Cooke v. United States*, 107 U.S.App. D.C. 223, 225 n. 3, 275 F.2d 887, 889 n. 3 (1960) (citing legislative history), and the courts of our jurisdiction have ruled against implying any such requirement.[4]

While a defendant's unlawful purpose is irrelevant to the prima facie case, some of our decisions have suggested that the absence of a criminal purpose, *coupled with* an effort to assist law enforcement, may serve as a defense to CPWL.[5] *See Logan, supra* note 4, 402 A.2d at 825; *Carey v. United States*, 377 A.2d 40, 43–44 (D.C.1977); *Hines v. United States*, 326 A.2d 247, 248 (D.C. 1974). In *Hines*, this court enunciated the standard for this so-called "innocent possession" defense: "In order to assert the defense of innocent . . . possession, an accused must show not only an absence of criminal purpose but also that his possession was excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement." 326 A.2d at 248. We have, however, consistently stressed the narrowness of this exception. As we have long recognized, congressional actions with respect to the CPWL statute "evidence[ ] the clearest intent to drastically tighten the ban on carrying dangerous weapons." *United States v. Walker*, 380 A.2d

---

3. At sentencing, the trial judge again emphasized his disapproval that Bieder "made a point of putting all the ammunition in."

4. Appellant suggests that these holdings have been called into question by *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). That case involved the interpretation of the National Firearms Act, 26 U.S.C. § 5861(d) (1994). The Supreme Court held that some indication of congressional intent, express or implied, is required to eliminate *mens rea*, which was totally absent from that Act. The legislative history of the CPWL statute, on the other hand, as recited in *Cooke, supra*, 107 U.S.App. D.C. at 225 n. 3, 275 F.2d at 889 n. 3, indicates that Congress deliberately eliminated any requirement to show an intent to use the weapon unlawfully. "Congress' goal was to prevent an individual from carrying an unlicensed pistol on

the street because of the danger that such a person would pose to the community. . . . To help achieve this end, the statute is phrased in terms of general intent and does not require proof of an intent to use the weapon for an extrinsic unlawful purpose." *Logan v. United States*, 402 A.2d 822, 825 (D.C.1979) (citation omitted).

Furthermore, in *Staples, supra*, the intent that was required was knowledge that the gun in question was an automatic weapon, thus falling within the Act. *See* 511 U.S. at 619, 114 S.Ct. at 1804. There is no doubt here that Bieder knew that he was carrying a pistol.

5. In appropriate circumstances, self-defense may also serve as a defense to CPWL. *Wilson v. United States*, 91 U.S.App. D.C. 135, 136, 198 F.2d 299, 300 (1952). These circumstances are, of course, absent from this case.

1388, 1391 (D.C.1977) (quoting *Cooke, supra,* 107 U.S.App. D.C. at 225, 275 F.2d at 889). "Given this congressional purpose, we have been most grudging in our allowance of exemptions from the [CPWL] statute." *Bsharah, supra,* 646 A.2d at 998. "[J]udicial recognition of exceptions to the statute has been extremely limited." *Logan, supra* note 4, 402 A.2d at 825. Indeed, the narrowness of the innocent possession exception is demonstrated by the fact that no reported decision in this jurisdiction can be found in which that defense was recognized as applicable on the facts.

■ The question, then, is whether it can be said on the facts here that Bieder's possession of the loaded pistol as he carried it from his car to the Capitol building was "excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement." Given the narrow reading of the exception, we think it incontrovertible that Bieder's deliberate action of loading the pistol precludes him from asserting the innocent possession defense. Though the gun had been unloaded and locked away, Bieder removed it from the trunk and filled it with fourteen rounds of ammunition, including a live round in the chamber. He then carried the gun in an unsecured pouch as he crossed the Capitol grounds with his young daughter.

To carry a loaded pistol in this manner cannot be conceived of as aiding or enhancing the social policy underlying law enforcement. "To the contrary, once appellant struck out on the public way, there was a new peril, that presented by appellant to the community at large," resulting from the presence of a fully loaded, loosely concealed pistol on the grounds of the Capitol. *See Logan, supra* note 4, 402 A.2d at 827. Our firearms statutes cannot be construed to excuse this sort of behavior.

*Affirmed.*